*In Re* ELECTION OF SHERIFF.

The following opinion was given under the provisions of Article XII, Section 2 of Amendments of the Constitution of the State by the Judges of the Supreme Court to the Governor, January 31, 1918:

*(1)    Elections.    Resignation of Member of General Assembly.*

A member of the General Assembly has the legal right to resign his office and create a prospective vacancy if he adopts the proper method of procedure looking to that end.

*(2)   Elections.   Resignation of Member of General Assembly.*

The resignation of a member of the General Assembly creating a prospective vacancy in the representation of a city or town while the General Assembly is in session, should be given to the clerk of such city or town, as he alone is authorized to order a new election to fill such prospective vacancy.

*(3)   Elections.   Resignation of Member of the General Assembly.*

The resignation of a member of the House of Representatives, while the General Assembly is in session, tendered to and accepted by said House of Representatives is a nullity.

*(4)   Elections.   Resignation of Member of General Assembly.*

As no particular form of resignation of a member of the General Assembly is prescribed by statute, the filing by a member of notice of his resignation with the city clerk of the city which the member represented, is proper, such officer being the one authorized to call an election to fill the prospective vacancy.

*(5)   Elections.   Resignation of Member of General Assembly.*

Under Art. XVI of amendments to the constitution, a member of the General Assembly continues to hold his office until the election and qualification of his successor and cannot create a vacancy by an attempted resignation of his office.

*(6)   Elections.   Resignation of Member of General Assembly.   Sheriffs.*

The election by the General Assembly to the office of sheriff of one who had tendered his resignation as a member of the House of Representatives to such House, which had accepted it and declared the seat vacant, is invalid and void, since the incumbency of the member resigning continued up to the time of the qualification of his successor and under the provisions of Gen. Laws, 1909, cap. 282, § 1, a member of the General Assembly is not eligible to the office of sheriff.

SUPREME COURT,

January 31, 1918.

*To His Excellency R. Livingston Beeckman, Governor of the State of Rhode Island and Providence Plantations:*

We have received from Your Excellency a request for our opinion upon the following statement of facts and question based thereon, viz.:

"At an election held under the provisions of Section 2 of Article XI, of the Amendments to the Constitution on the Tuesday next after the first Monday in November, A. D. 1916, Jonathan Andrews was elected a Representative in the General Assembly from the First Representative District of

Woonsocket, and qualified and continued to serve as such Representative until January 17, 1918, when during a session of the House of Representatives, he tendered in writing his resignation as such Representative to take effect at once, as follows:

"WOONSOCKET, R. I.

January 17, 1918.

*House of Representatives,*
*State of Rhode Island:*

I hereby resign the office of Representative from the First Representative District of Woonsocket, and request that this resignation take effect at once.

(Signed)    JONATHAN ANDREWS.

And thereupon the House voted to accept the same and declared the seat of the said Andrews vacant as follows:

The record being, 'That the resignation of Jonathan Andrews be accepted, and that this House of Representatives does hereby declare his seat vacant.'

And since that time said Andrews has not participated in the business of the General Assembly.

On January 18, 1918, a meeting of the Grand Committee of the General Assembly was held for the purpose of electing a sheriff of the County of Providence, to fill the vacancy caused by the death of Andrew J. Wilcox, and at said meeting, said Jonathan Andrews was chosen to fill said vacancy, receiving for said office seventy-nine votes, a majority of the votes cast, and was declared elected.

At the time of the balloting for the office of sheriff, no successor to Jonathan Andrews had been elected to his seat in the General Assembly. Prior to said meeting of the Grand Committee, said Jonathan Andrews filed with the City Clerk of the City of Woonsocket, notice of his resignation from the General Assembly, and on the 19th day of January, 1918, the City Clerk of Woonsocket issued notices of an election to be held in the First Representative District

of Woonsocket on February 12, 1918, to fill the vacancy caused by the resignation of said Andrews.

Section 1 of Chapter 282 of the General Laws of Rhode Island provides:

'SECTION 1.   No person shall be eligible to the office of sheriff who shall, at the time of his election, be a member of the General Assembly, or who shall not at such time be an inhabitant of the county for which he shall be elected.'

On the above facts, was said Jonathan Andrews legally elected to the office of the Sheriff of Providence County, to fill the vacancy caused by the death of Andrew J. Wilcox?"

In answer to this question, we are of the opinion that the said Jonathan Andrews was not legally elected to the office of Sheriff of Providence County, to fill the vacancy caused by the death of Andrew J. Wilcox.

The answer to this question requires a consideration, *first*, of the legal right of a member of the General Assembly to resign his office; *second*, the method of making such resignation, if the same be permissible; and *third*, the time when such resignation if permissible becomes effective.

*First*, as to the legal right of such member to resign his office.   The question has frequently arisen as to the right of a person who has assumed public office to voluntarily lay down that office in the absence of express authority so to do, and it has generally been held that he cannot.   We must examine the Constitution and the construction which has been placed upon it in order to determine whether such authority has been given to members of the General Assembly. By Article XI, Section 6 of Amendments to the Constitution it is provided that when a senator or representative elect shall refuse to serve a new election shall be held; but nowhere in the Constitution or its amendments is provision explicitly made for the resignation of one who has entered upon the duties of such office.

By Section 9, Article VIII of the original Constitution of this State it was provided that "vacancies from any cause

in the senate or house of representatives may be filled by a new election." This provision appears in nearly identical language in Section 6 of Article XI of Amendments to the Constitution. This provision, however, is of little assistance in the determination of whether or not a member of either of these bodies can create a vacancy or a prospective vacancy in his office by resignation.

In Section 25, Chapter 26, Revised Statutes, 1857, the provision in regard to vacancies was as follows: "Sec. 25. If any person elected senator or representative, shall at any time between his election and the expiration of his term, refuse to serve, and shall declare the same to the town clerk of the town for which he is elected, or shall die, resign or remove out of the state, the town clerk shall forthwith issue his warrant for an election to fill such vacancy, unless a special election for that purpose shall be ordered by the house in which the vacancy may occur." The above statute continued in effect until the adoption of Article XI of Amendments to the Constitution in 1900.

This law thus recognizing the right of a member of either branch of the General Assembly to resign and create a prospective vacancy in his office remained upon our statute books for over forty years. Its constitutionality, as appears from an examination of our reports, was never questioned before the court. In accordance with its provisions many members of the General Assembly resigned and the prospective vacancies created by such resignations were filled by new elections in various cities and towns of the state. A partial list of such resignations appears in the opinion, *In Re the North Smithfield Election*, 18 R. I. 817. If under the Constitution the right to resign did not exist such right could not be created by statute; but the enactment of the law referred to, recognizing the right and laying down the form of procedure for its exercise, and the acquiescence in the provisions of this law for so many years by the legislature, the people, and the courts, may properly be regarded as a practical construction given to the Constitution in that

regard, and the recognition of the constitutional right of a member of the General Assembly to lay down the duties of his office if he have due regard for other provisions as to the tenure of such office contained in the Constitution. We think that this practical construction of the Constitution must prevail. The repeal of the statute referred to would not extinguish the right to resign if such right is found, by construction, to exist under the Constitution. We are, therefore of the opinion that a member of the General Assem-

(1) bly has the legal right to resign his office and create a prospective vacancy if he adopts the proper method of procedure looking to that end. We have recently recognized the existence of such a right in the unreported case of *Troy v. State Returning Board*, M. P. No.. 273, decided by this court March 14, 1917.

*Second*, as to the proper procedure in making such resignation. Section 6 (p. 66), Public Laws of 1844, provided that "If any vacancy shall happen in either house, during any session of the general assembly, the house in which it occurs may order a new election, and appoint such time therefor and give such notice thereof, as they may deem proper."

The provisions of Section 25, Chapter 26, Revised Statutes, 1857, in regard to filling vacancies we have quoted *supra*. This statute of 1857 continued in force until the adoption of Article XI of Amendments to the Constitution in 1900. By Section 6 of said Article, it is provided: "A vacancy in the senate or house of representatives shall be filled at a new election. The general assembly shall provide by general law for the holding of such elections at such times as to insure that each town and city shall be fully represented in the general assembly during the whole of every session thereof so far as is practicable."

In compliance with this mandate a general law for the holding of such elections was enacted by the General Assembly (Public Laws, 1900-1901, Chapter 828, now Chapter 15, General Laws, 1909), by which it was provided that, "When-

ever from any cause a vacancy shall occur in the representation of any city or town in the general asembly while the general assembly is in session, the clerk of such city or town shall forthwith issue his warrant ordering an election to fill such vacancy." It thus appears that, under the present law in case of a vacancy in the representation of a city or town during a session of the General Assembly, the clerk of such city or town shall order a new election; but the law is silent as to the officer or body to whom such resignation shall be tendered, or notice of such resignation given, in order to create a prospective vacancy by reason of such resignation.

The general rule is that, in the absence of a special provision to the contrary, a resignation shall be tendered in the case of an appointive officer to the person or body having power to appoint a successor to fill the vacancy created by the resignation; and in the case of an elective officer to the officer or body having power to order a new election. We (2) therefore are of the opinion that the resignation of a member of the General Assembly creating a prospective vacancy in the representation of a city or town, while the General Assembly is in session, should be given to the clerk of such city or town, as he alone is authorized to order a new election to fill such prospective vacancy. We further hold that the attempted resignation of said Andrews to the House of (3) Representatives was a nullity.

As no particular form of resignation is prescribed by our law, a resignation may be made by any method indicative of the purpose (Mechem Pub. Officers, § 412). Said Andrews filed notice of his resignation with the city clerk of (4) Woonsocket, the official who is authorized to call an election to fill the prospective vacancy; we therefore find that the notice of resignation was properly given to said city clerk.

*Third*, as to the time when a resignation becomes effective and the person resigning ceases to be a member of the General Assembly. On this point there can be no doubt. Article XVI of Amendments to the Constitution expressly pro-

vides that senators and representatives shall severally hold their offices until their successors are elected and qualified. This provision in regard to their tenure of office has been the law under our constitution since its adoption and the language of the provision is explicit and unequivocal. The object of the provision, as stated in the Constitution in Section 6 of Article XI of Amendments, is "to insure that each town and city shall be fully represented in the general assembly during the whole of every session thereof so far as is practicable." Having accepted the office and the responsibilities pertaining thereto, a member can not throw off those responsibilities at his own pleasure. If one member could do this any number could do likewise and the State might be left in some time of public peril without a body capable of exercising the legislative function. Having accepted the office, a member is bound to discharge the duties thereof until his successor is elected and qualified and then and not until then does he cease to be a member of the legislature.

In the case of *State* v. *Town Clerk of South Kingstown*, 18 R. I. 276, in considering the nature of a vacancy in the office of a member of the General Assembly created by resignation, this court, in view of the constitutional provision as to tenure, has recognized the inability of a member to create an actual vacancy or interregnum in his office by the act of resignation; and to give effect to the statutory provision for a new election to fill the office which the member wishes to lay down the court spoke of such a condition as the creation of a prospective vacancy. We have adopted that expression in this opinion to Your Excellency. That expression, however, is also open to the criticism of lacking exactness, since strictly in accordance with the constitutional provision there is no period of vacancy in the office, actual or prospective. The incumbency of the member resigning continues up to the exact moment of the qualification of his successor.

In accordance with the foregoing we hold that said Andrews is still a member of the General Assembly. By reason of the provisions of said Section 1, Chapter 282 of the General Laws, 1909, which have been in force in this State for more than a century, said Andrews is not eligible to the office of sheriff, and his election thereto attempted to be made by the General Assembly in Grand Committee is invalid and void.

> C. FRANK PARKHURST,
> WILLIAM H. SWEETLAND,
> WALTER B. VINCENT,
> DARIUS BAKER,
> CHARLES F. STEARNS.