WILLIAM E. POWERS, *Atty. Gen.,*
*ex rel.* JOHN B. FOLEY, JR. *et al.*
*vs.* WILLIAM FOSTER CASWELL.

FEBRUARY 6, 1952.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a petition in equity in the nature of quo warranto under general laws 1938, chapter 585. It was brought in the name of William E. Powers as attorney general of the state of Rhode Island at the relation of John B. Foley, Jr. to determine whether the relator Foley or the respondent William Foster Caswell is entitled to the offices of member of the town's committee of the Jamestown and Newport Ferry Company, of the Jamestown Bridge Commission, and of the Narragansett Bay Bridge Authority, hereinafter called respectively the Ferry Company, the Bridge Commission and the Authority.

The cause was heard on an agreed statement of facts including certain exhibits. It appears therefrom that the Ferry Company was incorporated in 1873 as a private corporation by special act of the general assembly for the purpose of establishing and maintaining a ferry between the town of Jamestown and the city of Newport. Originally the town held only a portion of the capital stock but in the course of time it became and is now the owner of all such stock.

The charter of the Ferry Company was amended at different times, the last amendment being in 1934. That amendment declared the Ferry Company "a public body of the state of Rhode Island," and provided that the management and control of its business be thereafter vested in a town's committee of the town of Jamestown consisting

of five members who were to constitute the company's board of directors. One such member was to be elected each year for a term of five years by the qualified electors of the town. The amendment further provided that "Whenever any vacancy shall occur in the office of a member of the town's committee, said vacancy shall be filled by the *town council* of said town and the person so chosen shall continue to serve until the next annual town election, when the said vacancy shall be filled for the unexpired term." (italics ours)

The Bridge Commission was created as an agency of the state by public laws 1937, chap. 2536. It was thereby authorized to construct, operate and maintain a bridge between the towns of Jamestown and North Kingstown and to issue "bridge revenue bonds" of the state for such purposes. In the matter of the bonds see *Opinion to the Governor*, 58 R. I. 486. The act further provided that the commission consist of five members and that the five members of the town's committee of the Ferry Company should be the members of the commission. In section 2 (d) of this statute the term "town's committee" was defined to mean the committee as then constituted pursuant to section 2 of the 1934 amendment to the charter of the Ferry Company, the members thereof and their successors in office. In other words, by force of chapter 2536 a person elected a member of the town's committee of the Ferry Company thereby became also a member of the Bridge Commission. Hereinafter reference to the town's committee will mean the town's committee of the Ferry Company.

The Authority, which was also declared an agency of the state, was created by P. L. 1948, chap. 2152, to construct a bridge between Conanicut Island, on which the town of Jamestown is situated, and the island of Rhode Island, on which the city of Newport is located. Such act prescribed that the Authority consist of nine members, five of whom must be the members of the town's committee as defined in P. L. 1937, chap. 2536. Chapter 2152 further provided

that "In the event of a vacancy by death or otherwise in the term of office of any member of the town's committee a successor shall be elected to serve for the balance of the unexpired term of said member by the electors of the town of Jamestown at the next annual meeting of the town for the election of town officers."

It is evident from the above-mentioned interlocking acts that Jamestown is the center of a long-range program by the state to improve traffic conditions between its westerly mainland and the city of Newport. As already stated, Jamestown is located on Conanicut island which bifurcates the waters of lower Narragansett Bay into two navigable channels, commonly known as the east and west passages. The city of Newport, where there is a naval station of considerable importance, is situated on the easterly shore of the east passage, while the westerly mainland borders on the west passage. Prior to 1940, when the Jamestown bridge was completed, access from that mainland to the city of Newport was by ferry to the town of Jamestown and thence by another ferry to that city. Under such conditions a traveler between those two points was confronted with the alternative of crossing Narragansett Bay in the manner just described, or of following the much longer and circuitous route through Providence on the north. The ferry from the mainland to Jamestown has been eliminated by the Jamestown bridge over the west passage, and the ferry from that town to Newport probably will be discontinued when and if the building of the bridge authorized by P. L. 1948, chap. 2152, over the east passage is completed.

With these conditions in mind one can more readily appreciate why the legislature in the circumstances sought to protect the interests of the town of Jamestown as far as reasonably possible. The result of the legislation under consideration is that by force of the 1934 amendment to the charter of the Ferry Company and by virtue of P. L. 1937, chap. 2536, and of P. L. 1948, chap. 2152, the members of the town's committee automatically became members also

of the Bridge Commission and of the Authority. Consequently a vacancy in the town's committee also created a vacancy in the other two agencies.

The undisputed facts in the case are, in substance, as follows. The respondent William Foster Caswell was elected a member of the town's committee by the electors of the town of Jamestown on April 2, 1947 for a term of five years to expire in May 1952. Although he took the oath of office as a member of that committee on the day following his election, he failed to qualify as a member of the Bridge Commission or of the Authority until April 26, 1949. On November 10, 1950 respondent resigned as general manager of the Ferry Company. Thereafter he made periodic trips to New York seeking employment which would lead to his qualifying as a steam and Diesel engineer, and on or about January 10, 1951 he was employed on an ocean-going transport sailing out of the port of that city. Between the time when he resigned as general manager of the Ferry Company on November 10, 1950 and October 8, 1951, the significance of which latter date will presently appear, the town's committee and the Bridge Commission each held at least ten regular monthly and as many or more special meetings. The respondent attended only one meeting in that entire period.

Attention of the *town council* of the town of Jamestown, hereinafter called the council, having been called to respondent's conduct in the matter, it voted on September 27, 1951 to notify him "to appear before the Town Council meeting of October 8th, to show cause why he shouldn't *resign* as a member of the Jamestown Bridge Commission and if he does not appear to give cause, the Town Council shall declare the office now held by William Foster Caswell vacant." (italics ours) The foregoing quotation is from the town clerk's letter to the respondent under date of September 28, 1951, which letter was admittedly received by him.

When the respondent failed to appear as requested or to communicate with the council in any manner, that body proceeded to consider his case and called as a witness the chairman of the town's committee who testified, under oath, to many if not all of the facts hereinbefore stated. At the close of the testimony the council made certain findings of fact among which were (1) that in view of respondent's employment on a ship sailing out of the port of New York and the fact that he had a residence in that city even though he returned to Jamestown for occasional visits with his family, he had "for all intents and purposes moved out of the Town," apparently meaning that the kind of employment which he had sought and obtained in New York made it just as difficult, if not impossible, for him to discharge the duties of his various public offices as if he had in fact moved out of town; (2) that he had failed to attend ten monthly meetings of both the town's committee and the Bridge Commission, and that he had also failed to attend ten out of eleven special meetings of those bodies; (3) that he did not appear in response to an invitation to show cause why he should not resign; and (4) that "Therefore, *Caswell* has failed since November 1950 to perform his duties as a member of the Towns Committee of the Jamestown & Newport Ferry Company and a director of the Jamestown Bridge Commission and *has vacated said office*." (italics ours)

Based upon such findings from the uncontradicted testimony under oath, the council then by vote declared that the respondent had vacated his office as a member of the town's committee "and such other offices as he held by virtue of his said office * * *." Following such action and at the same meeting the council appointed John B. Foley, Jr., the relator in this cause, as a member of the town's committee until the vacancy for the unexpired term could be filled at the next annual town election.

Between the time of his appointment and October 18, 1951 Foley purported to qualify as a member of the town's

194

committee and by reason thereof also as a member of the Bridge Commission and of the Authority. At the meetings of the town's committee and of the Bridge Commission held on October 18, the chairman of those entities ruled that the respondent Caswell, who was present at that time, was still a member of both bodies, and further ruled that Foley was not entitled to participate in either of said meetings. As a consequence of such rulings Foley instituted the present proceedings.

The statutes and material facts appearing in the present record have been set forth at some length so that the questions at issue might be better understood. The respondent's main contention is that the council had no power to create a vacancy by *removing* him as a member of the town's committee, which office the relator Foley now claims. The respondent stresses the fact that he was elected a member of the town's committee in 1947 by the people of Jamestown for a fixed term of five years. From that fact and confining himself strictly to the language of the charter he argues that there is nothing in that instrument which authorizes the council to remove him from office and that, therefore, it could not fill a vacancy which did not exist, as it attempted to do on October 8, 1951 before his term had expired. In brief, his basic contention is that, in the absence of any specific amendment by the legislature to the charter of the Ferry Company authorizing the council to remove him, he was accountable for his actions only to the electorate of Jamestown and could be removed only at the expiration of his term.

The relator deals with the fundamental question at issue from a different viewpoint. He contends that respondent's *removal* from office by the council is not involved in the case; that the respondent himself created a vacancy in the office of member of the town's committee either by *resignation* or *abandonment,* and that on either or both of those grounds the council was authorized to fill such vacancy by G. L. 1938, chap. 332, §16, which statute and argument

respondent ignores. That section is part of the general statute relating to town and city officers. In so far as pertinent it provides that "Whenever a vacancy shall occur in *any* office by death, removal out of town, *resignation,* or by neglect or refusal to qualify, or for *any other cause,* the town council may fill the same until the next town meeting for the election of such officers * * *." (italics ours) The evident purpose of this section is to empower a council to fill temporarily a vacancy in any town office, elective or otherwise, arising as therein specified in order that the affairs of a municipality might be conducted in the best interests of the community.

Whatever the status of the Ferry Company may have been prior to 1934, the amendment to its charter of that year designated it as "a public body of the state of Rhode Island." When respondent in 1947 was elected and qualified as a member of the town's committee, which then constituted the board of directors of the Ferry Company, he became a public officer. So long as he retained that office he was subject not only to the provisions of the charter as amended but also to those of any applicable general statute, one of which in the circumstances, as relator properly urges, was §16 of chap. 332. The provisions of that section are clearly consistent with and complementary of those of the charter respecting the temporary filling of a vacancy which has been created by a voluntary and intentional resignation from or abandonment of a town office, such as a member of the town's committee.

We agree with the respondent that the council, acting either under the charter or chap. 332, §16, was without power to create a vacancy by *removing* him from his elective office, as §15 of said chapter in effect provides that all town officers shall hold their offices for the prescribed term "unless where it is expressly provided to the contrary." *Barber* v. *Barber,* 32 R. I. 266. But the lack of such power in the council, upon which respondent solely relies, does

not meet relator's contention that since the respondent had failed for almost a year to discharge the duties of his offices and had further failed to show cause why he should not "resign" his intentional and long-continued course of conduct was the equivalent in law to a vacancy resulting from a voluntary resignation or abandonment of office.

It is clear that, according to chap. 332, §16, when a vacancy in a town office occurs through "resignation" or "any other cause," which phrase reasonably includes abandonment of office, the council has the power to fill the vacancy thus created until the next annual meeting for the election of town officers. Our opinion in this cause therefore rests on the power of the council to fill a vacancy created by the incumbent himself through resignation or abandonment of office, and not on the ground that the council had the power to create a vacancy by removing him from office because he had moved out of town.

Generally speaking and in the absence of contravening constitutional or statutory provision, a public office may be vacated by resignation or abandonment. Ordinarily those two modes of surrendering an office raise a question of fact to be determined from the circumstances in each case. Unless otherwise provided, a resignation may be in writing, by parol, or by implication from conduct, as was clearly stated in *Barbour* v. *United States,* 17 Ct. Cl. 149, citing with approval *Van Orsdall* v. *Hazard,* 3 Hill (N.Y) 243, *State* v. *Ancker,* 2 Richardson (S.C.) 245, and *Page* v. *Hardin,* 8 B. Monroe (Ky.) 648. A resignation becomes effective and conclusive for all future purposes upon acceptance by the proper authority. The principles of law applicable to abandonment, which is a species of resignation and usually rests on extended and unexplained nonuser, are substantially the same. Excluding temporary absences, if unequivocal overt acts or a continued course of conduct fairly establish that the incumbent intended to resign or abandon his office and such intention so expressed is acted upon by the

proper authority, an irrevocable vacancy is created which may be filled pursuant to law. *Barbour* v. *United States, supra; Page* v. *Hardin, supra; People* v. *Hanifan,* 96 Ill. 420; *State* v. *Harmon,* 115 Me. 268; *Vanderbach* v. *Hudson County Board of Taxation,* 133 N.J.L. 126. 67 C.J.S., *Officers,* §§55, 56; 3 McQuillin Munic. Corps. (3d ed.) 439. See also *Doris* v. *Heroux,* 71 R. I. 491, 494.

The controlling issue in this cause is whether the council was justified in finding that the respondent had surrendered his office by way of implied resignation or abandonment. It is plain that this is not a case of a limited absence or of failure to perform the duties of the office because of temporary disability or other involuntary action beyond incumbent's control, as in *Doris* v. *Heroux, supra.* Here the undisputed facts, which we have hereinbefore set forth, clearly show that respondent's neglect to perform the duties of the respective offices for a long period of time was voluntary, intentional and designed to further his personal affairs in utter disregard of the public interests. Upon being given a fair opportunity by the council to explain his conduct in the matter he saw fit to ignore such request; and further, even when he claimed the offices after relator's appointment thereto he not only gave no explanation of his actions in the past but also made no statement as to what his intentions were with reference to the discharge of his official duties in the future. After careful consideration of the peculiar and unusual circumstances disclosed by the record before us it is our opinion that the council had ample ground, both in law and in fact, to hold that the respondent had voluntarily and intentionally vacated the offices by implied resignation or abandonment, and that such action was neither arbitrary nor unreasonable.

The respondent further contends that if the council had power *to remove* him from office the purported removal was without due process of law. This contention is without persuasive force because as indicated the question whether

the council had such power is not the determinative issue in the case. While we have agreed with respondent that the council had no power to *remove* him, we have also held that his conduct in relation to the discharge of his official duties was reasonably open, when considered as a whole, to a conclusion by the council that he had voluntarily and intentionally resigned from or abandoned the office of a member of the town's committee and of the two other offices incidental to and connected therewith.

In view of respondent's intentional and unequivocal conduct in disregard of the duties of his offices, the council, acting in the public interests, in effect notified him that unless he showed cause to the contrary his long-continued and voluntary abandonment of the offices was and would be considered tantamount to a resignation. Such a request is quite different from the preferring of charges for the purpose of removing him from office.

In any event the respondent was given ample opportunity to tell the people of Jamestown, through the council, why he had so obviously neglected his official duties. His intentional and unexplained absence at a time and place when he could have fairly stated his position in the matter left it reasonably open for the council to conclude, in the circumstances then known to all, that for personal reasons he intended to resign or abandon the offices, thereby himself creating a vacancy which the council could and did fill under chap. 332, §16. His appearance and claim of office at a meeting of the town's committee following such action by the council was of no avail to him according to well-established law. The various decisions of this court dealing with the question of due process in cases of *removal from office*, upon which respondent relies, are foreign to the real issue presently before us and therefore are inapplicable. The respondent's contention under consideration is without merit.

For the reasons herein stated, we find that the relator John B. Foley, Jr. is legally entitled to the offices in question,

namely, member of the town's committee of the Jamestown and Newport Ferry Company, of the Jamestown Bridge Commission, and of the Narragansett Bay Bridge Authority, and that the respondent William Foster Caswell now has no valid title to such offices.

The prayer of the petition for relief is granted, and on February 8, 1952 the parties may present to this court for approval a form of decree in accordance with this opinion.

### ON MOTION FOR REARGUMENT.

#### FEBRUARY 15, 1952.

PER CURIAM.   After our opinion in the above cause was filed the respondent asked and received permission to present a motion for leave to reargue.   Pursuant thereto he has filed such a motion, stating therein certain reasons on which he bases his contention that justice requires a reargument of the cause.   We have carefully considered those reasons and we are of the opinion that they suggest nothing which in the circumstances warrants such reargument.

The respondent's motion is denied, and the decree as presented by the relator in accordance with the opinion may be entered.

*Letts & Quinn, Daniel J. Murray,* for petitioners.

*Robert J. Conley, Edward W. Day, Charles F. Cottam,* for respondent.