376 A.2d 326

ANTHONY DeLUCA *vs.* RHODE ISLAND STATE BOARD OF ELECTIONS *et al.*

AUGUST 1, 1977

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

60

KELLEHER, J.   We issued a writ of certiorari in this case to review a decision rendered by the Rhode Island State Board of Elections (the Board) concerning the purported resignation of the petitioner, Anthony DeLuca (DeLuca), Councilman and City Council President of the City of Cranston. Other respondents, in addition to the Board, are Cranston's City Clerk and its Board of Canvassers (Canvassers).

On Friday, March 25, 1977, DeLuca dictated over the telephone to the Deputy City Clerk of Cranston a letter

tendering his resignation from the Cranston City Council. The letter, which was addressed to the City Clerk and composed of one sentence, read: "I tender my resignation from the Cranston City Council forthwith." The Deputy Clerk, as was her custom, signed DeLuca's name to the letter and noted her initials. She then placed the letter on the City Clerk's desk. DeLuca, however, did not specifically authorize either the signing or delivery of the letter. In fact, during the afternoon of March 25 when the City Clerk called DeLuca about the letter, the Council President said he would be in to sign it on the following Monday.

Apparently, though, DeLuca had a change of heart because on Monday, March 28, 1977, he publicly announced that he was not resigning his seat. Indeed, as President he conducted Cranston City Council meetings on March 28 and 30. Obviously, in his mind he had not and was not resigning.

But the City Clerk thought otherwise. At approximately 10:30 a.m. on March 28, there was delivered to the Canvassers a letter signed by the Clerk in which he referred to pertinent provisions of the City Charter and advised the Canvassers that there was a vacancy on the council because DeLuca had resigned. The Clerk's letter was dated March 25. The Canvassers then held a meeting to discuss the holding of a special election to fill the vacancy. DeLuca requested, but was denied, a hearing before the Canvassers. Undoubtedly with visions of musical chairs and two in one seat filling his head, DeLuca appealed to the State Board of Elections, renewing his contention that because he had not resigned there was no vacancy. The Board dismissed the appeal on the ground of lack of jurisdiction to determine the resignation issue.

We granted certiorari to review that decision and, finding that such jurisdiction does rest with the Board, remanded the case and directed the Board to make appropriate findings of fact. We also enjoined, until further order,

the holding of any primary or special election to fill the "vacancy." Pursuant to our order, the Board held a hearing, made certain findings of fact, and issued a decision in favor of DeLuca. Having retained jurisdiction in the case and because of the importance of the issue presented, we directed the City of Cranston to file a brief on any points it wished us to consider. The city has done so, and the case is now before us on the city's claim that the Board of Elections made erroneous findings of fact and conclusions of law.

It is well-established that on certiorari our review of factual questions is limited. If an examination of the record shows any legal evidence supporting the action taken, we cannot reverse. *Proffit* v. *Municipal Hearing Bd.*, 76-5-M.P. (R.I., filed May 24, 1977). Our review of the record reveals sufficient competent evidence to support the Board's factual findings.

We turn, then, to questions of law. In this instance there is but one issue presented: Was DeLuca's letter, which he did not sign or specifically authorize to be signed, a valid and binding resignation? We conclude that it was not and affirm the decision of the Board of Elections.

Essentially, the city has argued that DeLuca had given the Deputy Clerk general authorization to sign his letters and that in this case the letter was signed in the customary manner and the resignation accepted. The city's logic would make the issue one of attempted withdrawal of acceptance. It seems to us, however, that the question is more basic: What constitutes a resignation?

Generally, absent any constitutional or statutory provision to the contrary, a public office may be vacated by resignation or abandonment. The resignation, unless otherwise provided, may be written, oral, or implied from conduct. *Powers ex rel. Foley* v. *Caswell*, 79 R.I. 188, 86 A.2d 379 (1952). Broadly speaking, one can resign "by any method indicative of the purpose." *In re Election of Sheriff*, 41 R.I. 79, 85, 102 A. 802, 804 (1918).

In this instance DeLuca dictated a letter which he did not sign or authorize to be transmitted to the City Clerk or anyone else. First, is this a written resignation? We think not. The fact that DeLuca had authorized the Deputy Clerk to sign letters in the past does not persuade us that such blanket authorization covers the instant situation. In a matter of such magnitude, public policy requires that there be no uncertainty as to who is or who is not a public officer because otherwise there would be doubt and confusion which could lead to endless litigation. *People* v. *Kerner*, 19 Ill. 2d 506, 167 N.E.2d 555 (1960). Although neither we nor counsel have been able to find a case where a purported resignation was not signed, it seems to us that where a resignation is in writing, it must be signed by the party tendering it. Any other decision would promote doubt and confusion among the public and condone conduct that would imperil the orderly conduct of our governmental affairs.

Secondly, did DeLuca's conduct constitute a resignation "by any method indicative of the purpose"? Again, we answer in the negative. The city has not even contended, nor would we countenance an argument, that DeLuca abandoned his duties. To the contrary, in the midst of the controversy he continued to exercise his authority as President of the City Council. Was, then, his conduct in dictating the letter an act of resignation? We don't see how it can be. It seems to us that what is meant by conduct indicating resignation is action signifying to the voters at large that the officer is done with his former duties, as where he assumes another, inconsistent or incompatible office. *See, e.g., State* v. *Wolven*, 175 Ohio St. 114, 191 N.E.2d 723 (1963). Here, DeLuca dictated a letter of resignation and expressed an intent to sign it in the future.[1] To us that indicates nothing more than a statement that he was considering resigning.

---

[1]This is distinguishable from the case where a valid resignation is to operate only in the future or on the happening of a certain contingency, in which event the question is one of withdrawal of resignation. *See* Annot., 82 A.L.R.2d 750 (1962).

The petition for certiorari is granted, and so much of the record as relates to the Board of Elections' initial finding that it lacked jurisdiction to consider the resignation issue is quashed. Treating the Board of Canvassers' memorandum as something in the nature of a cross-petition for certiorari, we deny and dismiss the cross-petition. The records certified to us by the respective respondents are returned to them with our decision endorsed thereon.

*Robert S. Goldman, Keven A. McKenna,* for petitioner.

*Julius C. Michaelson,* Attorney General, *William Granfield Brody,* Special Assistant Attorney General, *Peter Palombo, Jr.,* City Solicitor, *Stephen F. Achille,* for respondents.