399 A.2d 1240.

ALDO AIUDI *vs.* JOSEPH BAILLARGEON *et al.*

APRIL 12, 1979.

PRESENT: JOSLIN, KELLEHER, DORIS AND WEISBERGER, JJ.

456

WEISBERGER, J. This case is before us on a petition for certiorari to review a judgment of the Superior Court upholding the discharge of the petitioner, Aldo Aiudi, from his position as a member of the Police Department of the City of Woonsocket. On May 15, 1975, the Chief of Police of Woonsocket filed charges against the petitioner for violations of certain regulations of the Woonsocket Police Department, namely, "conduct unbecoming an officer" and "conduct tending to cast disrepute on the department." The specifications alleged that the petitioner while serving as a security guard at Fernades Food World (Fernandes) had on several

occasions carried away groceries and other items from that establishment without first having paid for them.

The petitioner appeared at a hearing before the Director of Public Safety of Woonsocket who rendered a decision sustaining the charges against petitioner and dismissing petitioner from the department effective May 15, 1975. Pursuant to regulations of the police department and §10.1 of the Personnel Ordinance of the City of Woonsocket, petitioner appealed his dismissal to the Personnel Board of the City of Woonsocket and a second hearing was conducted on December 8 and 15, 1975. The board upheld the decision of the Director of Public Safety dismissing petitioner from the police department.

Thereafter, petitioner appealed to the Superior Court in accordance with the provisions of G.L. 1956 (1970 Reenactment) §45-20-1.1, which provides for a trial de novo in respect to all issues of fact and law relating to the dismissal of a police officer. After a hearing, the Superior Court entered judgment on October 4, 1976, upholding the decision of the Woonsocket Personnel Board discharging petitioner from the Woonsocket Police Department. The petitioner sought review by way of certiorari. The writ issued June 2, 1978.

The petitioner was appointed as a member of the Woonsocket Police Department in May 1962, and served until his dismissal effective May 15, 1975. In addition to his regular duties as a police officer, petitioner worked part-time for 7 years at Fernandes on Clinton Street in Woonsocket, serving as a security officer and controlling traffic in the parking lot. It was also his duty at closing time to make certain that everyone had left the store. During the period January through May 1975, petitioner worked at Fernandes on Thursday evenings.

In 1975 the store manager noted that items such as oil, lobster meat and shrimp were being stolen from the store. Consequently, a surveillance operation was undertaken by security agents engaged by Fernandes at the Clinton Street store. On April 17, 1975, a security employee of Fernandes

and the store manager observed one David Ashworth leave the store pushing a blue mobile carrier or buggy. They saw him remove five cases from the buggy and place them near the produce door. A few minutes later Ashworth was observed driving his automobile around to the rear of the store and loading the cases into the vehicle. He then drove the vehicle around to the parking lot at the front of the store. Later the observers noted that Ashworth moved the vehicle near petitioner's station wagon and placed at least five cases into the rear of petitioner's vehicle. These events caused another surveillance to be conducted on April 24, 1975. On this occasion two other security agents came into the store about 8:20 p.m., pretending to act as ordinary shoppers. They observed petitioner filling several empty bags with merchandise. Only one cash register was open, and the two security agents noted that petitioner did not check out his merchandise at this register prior to closing time. A short while later petitioner was observed placing seven bags into the rear of his station wagon. The trial justice specifically found that "at least some of those bags contained items which were not paid for and that were items that he placed in those bags earlier just before coming out."

Although petitioner denied that he had taken groceries from Fernandes without paying for them, the trial justice found that on both occasions Officer Aiudi had acted in the manner described by the surveillance witnesses and as corroborated in respect to the April 17 incident by the testimony of Mr. Ashworth. Ashworth's testimony was submitted to the court through a stenographic transcript of testimony which he had given in proceedings before the Director of Public Safety. The trial justice found that Officer Aiudi's conduct, which in effect amounted to receiving stolen goods on the first occasion and larceny on the second occasion, constituted "conduct which is unbecoming a police officer and conduct tending to cast disrepute on the police department." Therefore, he concluded that the charges filed by the Chief of Police of Woonsocket had been proven. The trial justice also concluded that the penalty of dismissal which petitioner received was reasonable and appropriate under all of the

circumstances and therefore entered judgment upholding the decision of the Personnel Board of the City of Woonsocket. This petition ensued.

The petitioner raises a number of arguments concerning his right to discovery and certain rulings which were made during the course of the administrative hearings. We cannot consider these arguments because we are reviewing a judgment of the Superior Court entered after a trial de novo. Thus, we review the proceedings in the Superior Court and not those which took place at the municipal level. Having availed himself of the full benefit of such a trial, without regard to the findings of fact or conclusions of law made by the administrative hearing agencies, petitioner is entitled to review only of the Superior Court proceedings. *See Berkshire Fine Spinning Associates* v. *Label,* 74 R.I. 6, 11, 60 A.2d 871, 874 (1948). In *Apice* v. *American Woolen Co.,* 74 R.I. 425, 60 A.2d 865 (1948), we held that as a result of a subsequent de novo hearing in the Superior Court, it was unnecessary to remand a workmen's compensation petition to the administrative agency whose hearing officer had not been validly appointed and was not therefore a *de jure* officer at the time of the earlier administrative hearing. We observed that "[a]n appeal from the department of labor brings up the entire matter for a hearing *de novo* before the superior court, which does not then act as a reviewing or appellate court in any sense. Thus the rights of all parties are fully protected in such a new hearing in that court." *Id.* at 437, 60 A.2d at 871. The petitioner understandably does not contend that he was denied discovery opportunities prior to trial in the Superior Court. Before his appearance in that court he had been afforded hearings before the Director of Public Safety and the Personnel Board of the City of Woonsocket and had an opportunity to see and cross-examine the witnesses presented against him. His challenges relate solely to alleged procedural defects at the administrative hearing. However, rulings relating to discovery and other procedural determinations at the municipal level are irrelevant to a review of the de novo trial in the Superior Court. *See Commonwealth* v. *Cronin,* 336 Pa. 469, 9 A.2d 408 (1939).

The petitioner also asserts that the regulations with whose violation he was charged are unconstitutionally vague and overbroad. In asserting this argument, petitioner cites a number of criminal cases involving statutes held to be vague but has not cited any case relating to dismissal of employees. Such a case was recently decided by the Supreme Court of the United States in *Arnett* v. *Kennedy,* 416 U.S. 134, 94 S. Ct. 1633, 40 L. Ed. 2d 15 (1974). There the Court considered the dismissal of a nonprobationary federal employee under a regulation allowing dismissal "only for such cause as will promote the efficiency of the service." In fact the employee had made slanderous utterances concering other employees in the Office of Economic Opportunity. In spite of the fact that the conduct involved speech and therefore had certain First Amendment overtones, the Court held that the phrase used was "constitutionally sufficient against the charges both of overbreadth and of vagueness." *Id.* at 159, 94 S. Ct. at 1647, 40 L. Ed. 2d at 36. The Court cited *United States Civil Service Commission* v. *National Association of Letter Carriers,* 413 U.S. 548, 578-79, 92 S. Ct. 2880, 2897, 37 L. Ed. 2d 796, 816 (1973), for the proposition that:

> "[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest. '[T]he general class of offenses to which . . . [the provisions are] directed is plainly within [their] terms, . . . [and they] will not be struck down as vague, even though marginal cases could be put where doubts might arise.' *United States* v. *Harriss,* 347 U.S. 612, 618 (1954)."

Further, in a case involving a court-martial of a military service officer, phrases very similar to those being attacked as facially unconstitutional in the present case were upheld by the Supreme Court of the United States. In *Parker* v. *Levy,*

417 U.S. 733, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974), Captain Levy was court-martialed for, *inter alia*, violation of certain articles of the Uniform Code of Military Justice, namely, "conduct unbecoming an officer and a gentleman" and conduct "to the prejudice of good order and discipline in the armed forces." Levy was found guilty by a court-martial and sentenced to dismissal from the service, forfeiture of all pay and allowances, and confinement for 3 years at hard labor. Again, the defendant's conduct involved not only disobedience of a direct order, but also speech in that he made public statements to enlisted personnel urging them to refuse to obey orders to go to Viet Nam. Although First Amendment rights were involved, the Court upheld the phrases in the code against a challenge for overbreadth and vagueness. The Court stressed the fact that any reasonable person in military service would know that such conduct would violate these articles regulating military conduct.[1] As in *Arnett,* the Court used an "as applied" test. In the course of its analysis the Court noted that one who has received fair warning of the criminality of his own conduct from the statute in question is not entitled to attack it on the basis that the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. *Parker v. Levy, supra,* at 756, 94 S. Ct. at 2562, 41 L. Ed. 2d at 458. The Court further cited *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S. Ct. 2908, 2915, 37 L. Ed. 2d 830, 839 (1073), where the Court had previously concluded in respect to a statute which limited political activity by state employees:

"Embedded in the traditional rules governing

---

[1]Although *Parker* v. *Levy,* 417 U.S. 733, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974) dealt with a person in military service, we have previously observed that police officers in many respects constitute a military organization and are subject to disciplinary methods that are "peculiarly incident to the efficient functioning" of their department. *Simmons* v. *Town Council,* 112 R.I. 522, 531-32, 312 A.2d 725, 730 (1973); *Howland* v. *Thomas,* 98 R.I. 470, 476-77, 204 A.2d 640, 644 (1964).

constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. See, e.g., *Austin* v. *The Aldermen,* 7 Wall. 694, 698-99 (1869); *Supervisors* v. *Stanley,* 105 U.S. 305, 311-315 (1882); *Hatch* v. *Reardon,* 204 U.S. 152, 160-61 (1907); *Yazoo & M. V. R. Co.* v. *Jackson Vinegar Co.,* 226 U.S. 217, 219-220 (1912); *United States* v. *Wurzbach,* * * * [280 U.S. 396] at 399; *Carmichael* v. *Southern Coal & Coke Co.,* 301 U.S. 495, 513 (1937); *United States* v. *Raines,* 362 U.S. 17 (1960)."[2]

Certainly, for a police officer of many years' experience to suggest that the phrases "conduct unbecoming an officer" and "conduct tending to cast disrepute on the department" did not give him reasonable notice that activities such as

---

[2]In *Broadrick* v. *Oklahoma,* 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973) the Court recognized there were certain limited exceptions to these principles based upon the most weighty countervailing policies. One such exception is the standard applied in the area of the First Amendment:

"It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. *Herndon* v. *Lowry,* 301 U.S. 242, 258 (1937); *Shelton* v. *Tucker,* 364 U.S. 479, 488 (1960); *Grayned* v. *City of Rockford,* 408 U.S., at 116-117. As a corollary, the Court has altered its traditional rules of standing to permit — in the First Amendment area — attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. *Dombrowski* v. *Pfister,* 380 U.S. at 486. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."

*Id.* at 611-12, 93 S. Ct. at 2915-16, 37 L. Ed. 2d at 839-40 (1973). In the case at bar we are confronted with conduct rather than expression, so that the stringent tests applied in First Amendment situations are inapposite.

larceny and receiving stolen goods would fall within their ambit would be unconvincing even to the most credulous.[3]

The petitioner also argues that the trial justice erred in admitting into evidence the prior recorded testimony of Mr. Ashworth before the Director of Public Safety. The petitioner asserts he had an insufficient opportunity for cross-examination when Ashworth testified at that prior hearing. We have stated in *State* v. *Ouimette*, 110 R.I. 747, 298 A.2d 124 (1972), that transcripts of prior testimony may be admitted where the witness is dead, insane, or beyond the jurisdiction of the court, or on diligent inquiry cannot be located, or where some other circumstance exists which shows that the witness cannot be procured as a witness at the second trial. *Id.* at 754, 298 A.2d at 130. We further observed:

> "Generally, the decision as to whether these conditions have been met presents a preliminary question for the trial court's determination. 'The admission of the evidence, therefore, rests within the sound discretion of the court and its exercise thereof will only be overruled when abused.' "

*Id.* at 754, 298 A.2d at 130. *State* v. *Weinrib*, 140 Conn. 247, 252, 99 A.2d 145, 148 (1953). In the case at bar there was substantial evidence adduced to show that Mr. Ashworth was outside the state in Florida at the time of the Superior Court hearing, and that he had declined to make himself available for a deposition while he was residing in Mansfield, Massachusetts, prior to leaving for Florida. Indeed, a review of the transcript discloses that counsel for petitioner did not object to the introduction of the transcript on the ground that

---

[3] A number of other cases in the federal courts have utilized "as applied" tests in determining the validity of standards of conduct prescribed for various classes of employees and professional persons. *United States* v. *Mullens*, 583 F.2d 134 (5th Cir. 1978) (federal meat inspector); *Todd & Co.* v. *Sec. & Exch. Comm'n*, 557 F.2d 1008 (3rd Cir. 1977) (securities broker); *Hayes* v. *City of Wilmington*, 451 F. Supp. 696 (D. Del. 1978) (employee of municipal fire department).

Ashworth was available. His sole ground of appeal regarding the admission of the transcript was the alleged inadequacy of his opportunity to cross-examine.

We have reviewed the transcript of Ashworth's testimony and conclude that the opportunity for cross-examination was adequate. Certain collateral attacks on the credibility of the witness were ruled irrelevant by the Director of Public Safety. The thrust of these questions was designed to show that Mr. Ashworth may have participated in conspiracies to commit larceny with persons other than petitioner. In any event, the trial justice specifically found as a fact that "Ashworth is a thief." The trial justice further admitted extraneous evidence offered by petitioner to show that Ashworth had engaged in dishonest conduct on other occasions. This undoubtedly effectively accomplished any purpose which might have been achieved through the questions which had been ruled irrelevant in the municipal hearing. Thus, assuming that the Director of Public Safety had improperly limited cross-examination on this issue, the trial justice in the Superior Court completely cured any such defect.

The petitioner further argues that the trial justice erred in determining that the burden of proof to be applied was that of a fair preponderance of the evidence. We believe that the trial justice was correct in this determination even though the conduct shown as ground for dismissal would also constitute the basis for criminal charges. "[Where] the proceeding in [a] case is civil in its nature, even though the charge is the commission of a crime, the offense may be established by the preponderance of the evidence." *Glass* v. *State Board of Public Roads*, 44 R.I. 54, 115 A. 244, 246 (1921). Although the conduct may have been of a criminal nature, the proceedings for dismissal were civil. The statute which accords police officers a Superior Court trial does not indicate any intention on the part of the Legislature to vary the burden of proof which would ordinarily obtain in civil actions. *Taglianetti* v. *New England Telephone & Telegraph Co.*, 81 R.I. 351, 103 A.2d 67 (1954); *see DaCosta* v. *Rose*, 70 R.I. 163, 37 A.2d 794 (1944).

The petitioner argues that he was entitled to a hearing before being suspended without pay immediately upon filing of charges by the Chief of Police. The short answer to this argument is that it was not raised in the Superior Court. The only questions entitled to review in the Supreme Court are those which have been raised in the court below. *Tente v. Tente,* 112 R.I. 636, 314 A.2d 149 (1974); *Hawkins v. Smith,* 105 R.I. 669, 254 A.2d 747 (1969); *Romeo v. Cranston Redevelopment Agency,* 105 R.I. 651, 254 A.2d 426 (1969); *Spouting Rock Beach Association v. Garcia,* 104 R.I. 451, 244 A.2d 871 (1968). *See Gradilone v. Superior Court,* 79 R.I. 256, 87 A.2d 497 (1952).

The petitioner also asserts that in hearing this matter the trial justice erred in not observing a prior order relating to a continuance which had been made by another justice of the Superior Court. The petitioner did not present to the trial justice, nor does he present to us, a transcript of the ruling of the other Superior Court justice. Consequently, there is utterly no basis for reviewing his contentions in this respect. The trial justice was correct in exercising his own judgment in determining whether the case was in posture for trial at the time that it came before him.

Although petitioner does not specifically challenge the Superior Court judgment on the ground of any lack of evidence to support the findings of fact, we have reviewed the transcript and find that the evidence overwhelmingly supports the factual determinations made by the trial justice. Our review on certiorari is limited to determining whether there is any competent evidence to support the judgment of the tribunal below. *Town of Narragansett v. International Association of Fire Fighters,* 119 R.I. 506, 380 A.2d 521 (1977); *DeLuca v. Rhode Island State Board of Elections,* 119 R.I. 59, 376 A.2d 326 (1977); *Manuel J. Furtado, Inc. v. Sarkas,* 118 R.I. 218, 373 A.2d 169 (1977). However, in this case the quantum of proof goes well beyond that which would be needed to sustain the judgment. We also conclude that the trial justice was correct in upholding the dismissal of petitioner under all the circumstances in the case.

We have examined the other contentions raised by the petitioner and find that they were not asserted in the Superior Court and therefore conclude that they may not be raised for the first time on review by certiorari.

For the reasons stated, the judgment of the Superior Court is affirmed, and the writ of certiorari heretofore issued is quashed. The case is remanded to the Superior Court with our decision endorsed thereon.

Mr. Chief Justice Bevilacqua did not participate.

*Stephen E. Cicilline*, for petitioner.

*Aram P. Jarret, Jr.*, Assistant City Solicitor, for respondents.