Elsie RUSSELL

v.

Robert KALIAN et al.

No. 79-220-Appeal.

Supreme Court of Rhode Island.

April 28, 1980.

William Rutzick, R. I. Legal Services, Providence, for plaintiff.

Aram K. Berberian, Warwick, for defendants.

## OPINION

KELLEHER, Justice.

This is a Superior Court civil action in which the plaintiff, seventy-year-old Elsie Russell (Elsie), seeks damages and equitable relief against her landlord, Robert Kalian (Kalian), and Carmine Pari (Pari), a constable hired by Kalian. The appeal is brought by Kalian and Pari.

On July 13, 1977, Elsie returned to her apartment at 11 Croyland Road in Providence, where she discovered Kalian and a U-Haul truck in front of the building. When Elsie asked Kalian who was moving in, he responded, "No one. You're moving out." Elsie immediately went up to her apartment and encountered Pari, who introduced himself as a "sheriff" and who showed Elsie what was presumably a writ

of execution for possession. Elsie stood by and witnessed the removal of most, if not all, of her worldy belongings, including the navy uniforms of her sons and deceased husband, the family Bible, her daughter's wedding gown, and her dentures. Kalian conditioned the return of this property on payment of $350 for moving expenses.

In her complaint Elsie alleged that the execution that Kalian obtained against her following a default judgment for possession of her Croyland Road apartment had expired a month prior to the eviction. Her request for damages and equitable relief against both Kalian and Pari was based upon a claim of trespass and the wrongful removal of her property. She also sought damages solely against Kalian on the theory that he wrongfully held her property in violation of G.L.1956 (1969 Reenactment) §§ 34–18–9 and 34–18–9.1 (1979 Supp.) by conditioning its return on the payment of $350 without obtaining court approval that this demand figure represented reasonable and lawful moving expenses.

Elsie's motion for partial summary judgment on the issue of Kalian's and Pari's liability on both claims for relief was granted, and a hearing on the assessment of damages ensued. At the hearing, Elsie testified that it was not until the first week of July 1977 that she learned that her apartment had to be vacated in a week. When Kalian, Pari, and the movers arrived at the apartment, Elsie's belongings were already wrapped and packaged in anticipation of her move to a nearby apartment on the following day. The trial justice found that on the day of the eviction, Kalian and Pari had actual knowledge that Elsie was preparing to move the next day. He also determined that Kalian and Pari had unlawfully operated under an execution invalid on its face since the seizure of Elsie's property occurred thirty days after the execution had expired. At the close of the testimony, the trial justice afforded Kalian an opportunity to return all of Elsie's property, but he declined to do so under a "claim of right." Elsie was awarded $510 in compensatory damages, $5,000 in punitive damages, and replevin for various priceless possessions.

Before proceeding to the merits of the appeal, we must review a procedural "muff." An examination of the record reveals that the appeal in this case was filed eight days following the trial justice's oral decision but seven days before the actual entry of judgment. In support of their argument that the case should not be dismissed for failure to comply with Super.R. Civ.P. 58(a) and Supreme Court Rule 4(a), Kalian and Pari argue that their appeal was filed in reliance on a copy of the formal order that had been served on them the day before their appeal was filed. In the interests of justice and to avoid undue hardship, we do not regard this minor procedural defect as fatal. We shall treat the appeal as if it had been timely filed after the entry of judgment. *Beauvais v. Notre Dame Hospital*, R.I., 387 A.2d 689 (1978); *see Malinou v. Kiernan*, 105 R.I. 299, 251 A.2d 530 (1969).

Initially, Kalian and Pari contend that the clerk of the Sixth Division District Court acted contrary to the provisions of G.L.1956 (1969 Reenactment) § 9–25–21 in entering the return date of June 13, 1977, upon the execution for possession of Elsie's apartment. Since the execution was issued on May 23, 1977, it was valid for twenty days. According to Kalian and Pari, this alleged error would render the execution irregular but not void because the statute affords a successful plaintiff a three-month period during which the execution can be served.

This argument is not persuasive, for the execution's twenty-day return date is clearly sanctioned by § 9–25–21, which requires that "[e]very execution issued by any district court shall, *unless otherwise specifically provided therein*, be returnable three (3) months after the date thereof, and be returned to the district court which issued it." (Emphasis added.) This language indicates that, in the absence of a date specified on

the execution, the date of return is to be three months after issuance. June 13, 1977, was the date inserted on the execution in question; thus, Kalian and Pari could not lawfully act on the execution after this date.

It may be that the execution in question was issued as the result of the summary procedure set forth in § 34–18–9(a), where the ground for the ejectment is nonpayment of rent. In the event judgment is issued for the landlord, this statute specifically requires that the execution shall be issued only to the sheriff. If the sheriff or his deputy does not execute the mandates of the execution within twenty days of its issuance, the sheriff must appear before the justice of the court issuing the execution on the day following this twenty-day period to show cause why the court's mandate was not carried out. The record before us does not, however, indicate the grounds upon which Kalian sought to evict Elsie, and we shall not speculate concerning the reason why a twenty-day return date was selected. If Kalian and Pari were dissatisfied with the execution, they could have returned to the District Court and sought the issuance of an alias execution. Instead, they chose to evict Elsie under an invalid execution, thereby subjecting themselves to liability for trespass.

Secondly, Kalian and Pari contend that the trial justice erred in awarding Elsie punitive damages since their "conversion" of her property was done in good faith. A reading of the complaint in this case reveals that the conversion claim was addressed solely to Kalian, who allegedly refused to return Elsie's property in violation of §§ 34–18–9 and 34–18–9.1.[1] The record indicates that the trial justice did not, however, award punitive damages for Kalian's refusal to deliver the property but rather for the original trespass of both men. This is evident from his statement:

"In this case, it's clear to the Court that the defendants acted with reckless-

---

1. It is clear from a reading of G.L.1956 (1969 Reenactment) §§ 34–18–9 and 34–18–9.1 (1979 Supp.) that part of the costs which may be assessed against the tenant are the reasonable moving costs incurred by the sheriff in carrying

out the mandate of the execution, but the tenant must first pay the sheriff those costs before the tenant can repossess his or her personal property.

ness against the backdrop of the statement that the plaintiff was preparing to move out the following day, the defendants undertook to act in the face of an execution that had expired almost a month before. In the Court's judgment, that is the kind of recklessness that calls for punitive damages."

The trial justice's comments make it quite clear that he found bad faith solely on the basis of what transpired on the day when Kalian and Pari entered Elsie's premises and hauled away her possessions. Whatever transpired thereafter was totally immaterial to his award of punitive damages.

 Finally, an effort is made to argue the constitutionality of the statutory prohibition against the landlord's use of self-help, to wit, G.L.1956 (1969 Reenactment) § 34–18–17 (1979 Supp.). This issue was not raised at the trial level, and we see no reason to depart from our well-settled principle that we shall not consider such an issue for the first time on appeal. *Wickes v. Kofman*, R.I., 402 A.2d 591 (1979); *Aiudi v. Baillargeon*, R.I., 399 A.2d 1240 (1979).

The defendants' appeal is denied and dismissed, and the judgment appealed from is affirmed.

MURRAY, J., did not participate.