James **HAYES**, Plaintiff,

v.

**CITY OF WILMINGTON, Delaware and Thomas B. Maloney, Individually and as Mayor of the City of Wilmington, Delaware, Department of Public Safety of the City of Wilmington, Delaware and Norman Levine, Individually and as Commissioner of the Department of Public Safety of the City of Wilmington, Delaware, Wilmington Bureau of Fire and James P. Blackburn and Walter Williams, Francis T. Savage, and Paul A. Hanley, Individually and as Officers of the Wilmington Bureau of Fire, Defendants.**

Civ. A. No. 75–75.

United States District Court, D. Delaware.

May 26, 1978.

John S. Grady, of Bader, Dorsey & Kreshtool, Dover, Del., for plaintiff.

Jeffrey S. Goddess, City Sol. and Charles H. Toliver, IV, Asst. City Sol., Wilmington, Del., for defendants.

## OPINION

LATCHUM, Chief Judge.

Plaintiff James Hayes has been employed by the defendant City of Wilmington ("City") as a member of the defendant Bureau of Fire since 1960. In March 1973, Hayes was suspended without pay for allegedly violating three of the Bureau of Fire's rules. The suspension lasted approximately four and one-half months and ended immediately after a departmental Trial Board held a hearing on the three charges and found Hayes guilty on all of them. In accordance with the Trial Board's recommendation, Hayes received a sanction of one thousand hours of penalty time and five years of probation.

In 1975, Hayes instituted this action for injunctive and declaratory relief and damages against the City, the Bureau of Fire, the Wilmington Department of Public Safety, and various officers of those three defendants in both their individual and official capacities.[1] He claims (1) that defendants effected his suspension in violation of his constitutional right to procedural due process, (2) that one of the rules he allegedly violated is unconstitutionally vague and overbroad, and (3) that the penalties defendants imposed upon him violated his rights under federal and state law. The parties have filed cross-motions for summary judgment;[2] this opinion disposes of the issues raised by those motions.

## I. BACKGROUND FACTS

On the evening of March 21, 1973, plaintiff Hayes was arrested by a Delaware

---

1. The complaint named the following individuals as defendants: Thomas B. Maloney, then Mayor of the City of Wilmington, Norman Levine, then Commissioner of the Department of Public Safety, James P. Blackburn, Chief of the Wilmington Bureau of Fire, and Walter Williams, Francis T. Savage and Paul A. Hanley, the officers of the Bureau of Fire who served on the Trial Board in Hayes' case. Docket Item 1. The parties have entered into a stipulation of dismissal with prejudice as to the defendant Francis T. Savage. Docket Item 27.

2. Docket Items 33 and 34.

state policeman and charged with driving under the influence of alcohol in violation of 21 Del.C. § 4176 (1970 Supp.). The police detained Hayes overnight at a state police barracks and took him before a magistrate the following morning, March 22, 1973.[3] At approximately 1:15 p. m. that same day, Hayes reported to work. Because he arrived five hours and twenty minutes after his scheduled reporting time of 7:55 a. m., Hayes was asked by his immediate supervisor, Lieutenant Donald Donovan, to fill out a statement indicating why he was not at roll call.[4] Hayes then made the following statement:

> I respectfully wish to report that on this date I was unavoidably detained on personal business and could not report for duty on time.
>
> I did report at the earliest possible time.[5]

Lieutenant Donovan told Hayes that his statement did not provide sufficient detail to meet the requirements of the Bureau's general orders, but he refused to say anything more.[6] Donovan then informed Hayes that he intended to file charges against him for being late in violation of Rule 170, Section 2 of the Rules and Regulations of the Bureau of Fire[7] and for failure to provide a complete statement of the reasons for his lateness as required by General Order Z–17.[8] Donovan forwarded the charges through the departmental mail to the Chief of the Bureau of Fire, James P. Blackburn, who is a defendant in this action.

Blackburn received the charges on March 23, 1973, and, with the concurrence of the Commissioner of the Department of Public Safety, Norman Levine,[9] another defendant herein, he sent a hand-delivered letter to the plaintiff placing him "on suspension without pay, effective 12:01 A.M. Saturday, March 24, 1973."[10]

On March 26, 1973 Hayes submitted another statement to Chief Blackburn in which he admitted being stopped on March 21, 1973 and held overnight by the state police for refusing to take an alcoholic content test.[11] Whether that statement was sufficient to satisfy the requirements of General Order Z–17 is a matter of dispute between the parties. On March 30, 1973 Hayes sent another memorandum to Chief Blackburn, informing him that he had appeared in the Court of Common Pleas and refused to waive his right to a jury trial and that he was scheduled to be arraigned in Superior Court on April 6, 1973.[12]

---

3. Hayes dep., Docket Item 21, p. 33.

4. Donovan dep., Docket Item 22, p. 3.

5. Blackburn dep., Docket Item 24, exh. 4.

6. Donovan dep., pp. 3–6; Hayes dep., pp. 34–36.

7. Docket Item 38A, exh. A–5. Rule 170, Section 2 provides:
   170. Under penalty of suspension, fine, overtime, reprimand, or dismissal, every member of the Bureau of Fire is forbidden to be guilty of violations of any of the Rules and Regulations governing the Bureau of Fire:
   .    .    .    .    .
   2. Being late in reporting for duty.

8. Docket Item 38A, exhs. A–4 and A–5.

9. Blackburn dep., pp. 7–8; Levine dep., Docket Item 46, p. 3.

10. Docket Item 38A, exh. A–6. The suspension letter actually listed four alleged violations of departmental rules as the bases for the suspension. Besides the charges of reporting late and failing to provide an adequate statement, the letter cited alleged violations of "Rule 54A of Bulletin 12 of the Official Action Guide" and "Rule 170, Section 4 of the Rules and Regulations" as reasons for Hayes' suspension. The latter rule proscribes lying to a superior officer; the record contains no evidence regarding the meaning of Rule 54A of Bulletin 12. *See* Docket Item 38A, exh. A–13. The additional charges apparently stemmed from incidents allegedly involving Hayes that occurred as much as two years before the suspension. *See* Blackburn dep., pp. 8–11. It appears undisputed, however, that the charges for being late and failing to make a complete statement, independent of the other two charges, prompted the suspension at issue in this case. *See id.* pp. 8–14; Pre-Trial Order, Docket Item 28, par. 5.

11. Blackburn dep., exh. 5.

12. Pre-Trial Order, pars. c(8) and c(9); Hayes dep., exh. 1.

During approximately the same time period, Assistant Chief Barrett Conner conducted an independent investigation of the events that caused Hayes to be late. Based on his review of the police file on the incident and an interview with the arresting officer, Conner determined that Hayes had been stopped because he was observed driving in an erratic manner, that the arresting officer detected a strong odor of alcohol on his breath, that he had refused to submit to any test designed to determine the amount of alcohol in his system, that he had been "loud, abusive and used profane language toward the Trooper," and finally that he had been detained overnight and arraigned the next day in magistrate's court on a charge of driving under the influence of alcohol.[13] These findings led Conner to file an additional charge against Hayes on April 2, 1973,[14] alleging a violation of Rule 169, Section 23 of the Rules and Regulations, which requires firemen, under pain of suspension or other penalties, to

> 23. Be governed by the customary rules of good behavior observed by law abiding and self-respecting citizens. Regardless of the time or place, whether in uniform or not, members shall conduct themselves in a manner that will not bring discredit to themselves or to the Department.

Hayes was scheduled to appear before a departmental Trial Board on the two original charges on April 4, 1973, but on April 2, 1973 Chief Blackburn postponed the hearing indefinitely. A factual dispute exists about the reason for the postponement; plaintiff attributes it to the filing of the third charge, while defendants assign the delay to the Bureau of Fire's general practice of postponing Trial Board hearings until after final disposition of any related criminal charges pending against the accused. Another factual dispute concerns whether the plaintiff requested a prompt hearing after his suspension. In this respect, the only clearly established facts are that the plaintiff pleaded guilty to a charge of reckless driving in violation of 21 Del.C. § 4175 on June 21, 1973, that he reported that fact to the Bureau of Fire the same day, and that he appeared before a Trial Board on August 7, 1973.[15]

Plaintiff's suspension lasted four and one-half months from March 24, 1973 to August 7, 1973.[16] At his hearing, plaintiff pleaded "guilty with explanation" to the lateness charge and "not guilty" to the other two charges. The Trial Board found him guilty on all three and ordered that he be given fifty penalty hours for being late, 100 penalty hours for failing to provide a complete statement, and 850 penalty hours for conducting himself in a manner which brought discredit on the Bureau of Fire. In addition, Hayes was placed on probation for a period of five years.[17]

As to the 1000 penalty hours, Hayes had an option: he could go on suspension for that length of time or work that number of hours overtime without pay on a schedule left to the discretion of the Bureau of Fire. Hayes decided to work off the penalty time [18] and he completed it on March 25, 1974.[19]

In Count I of the complaint plaintiff asserts that defendants have violated his

---

13. Blackburn dep., exh. 6, 7; Blackburn affidavit, Docket Item 39, exh. 3c.

14. Blackburn affidavit, exh. 3e.

15. Pre-Trial Order, pars. c(11) and c(12); Blackburn dep., pp. 54–55 and exh. 11.

16. When his suspension began, plaintiff was required pursuant to Rule 169, Section 10 to report to Chief Blackburn's Office at 9:00 a. m. and 3:00 p. m. daily. On April 4, 1973, however, the Bureau of Fire abolished that requirement. Pre-Trial Order, par. c(7) and c(10); Blackburn dep., exh. 12.

17. Blackburn dep., exh. 9.

18. Hayes signed a statement indicating his election on August 8, 1973. Docket Item 38A, exh. A–8. In the same statement Hayes stated that he understood he would not get credit toward his pension eligibility, clothing allowance, or vacation time for the period of his suspension (March 24, 1973 to August 7, 1973), and that he would not be paid for any holidays which fell within that time period. *Id.*

19. Pre-Trial Order, par. c(18).

constitutional rights in essentially three ways. First, he challenges his suspension on procedural due process grounds. Next, plaintiff claims that Rule 169, Section 23, which requires firemen to conduct themselves as "law abiding and self-respecting citizens," is unconstitutionally vague and overbroad. The third and final federal claim relates to the penalty imposed on the plaintiff. He argues that both the magnitude of the penalty and the option to work 1,000 hours without pay were unreasonable and therefore violative of substantive due process.[20]

In addition to his federal claims, plaintiff has asked the Court to exercise its pendent jurisdiction over two state law claims, both of which pertain primarily to the penalty imposed upon Hayes. Count II of the complaint alleges that during the relevant time period plaintiff was a third party beneficiary to a collective bargaining agreement entered into by the defendant City and the union that was the exclusive bargaining agent for the employees of the Bureau of Fire. Plaintiff claims that the penalties imposed upon him violate several articles of the agreement and therefore seeks relief on breach of contract grounds.[21] In Count III the plaintiff argues that, by requiring him to work 1,000 hours without pay, the defendant City violated the Delaware Minimum Wage Law, 19 Del.C. § 902.[22]

Defendants have moved for summary judgment on all issues while the plaintiff has requested summary judgment on the following issues only: (1) whether Rule 169, Section 23 is vague and overbroad and therefore violative of plaintiff's due process rights; (2) whether defendants violated plaintiff's procedural due process rights by failing to provide him with a hearing prior to his suspension or "at the very minimum a hearing immediately after his suspension"; and (3) whether the penalty of working without pay violates either substantive due process, Article III, Section B of the collective bargaining agreement, or the Delaware Minimum Wage Law or all three. Having reviewed the salient facts, the Court now turns to the merits of the parties' contentions.

## II. FEDERAL CLAIMS AGAINST DEFENDANT CITY

It is well settled that a municipality and its agencies are not "persons" within the meaning of 42 U.S.C. § 1983 for purposes of obtaining either damages or equitable relief. See, e. g., City of Kenosha v. Bruno, 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Monroe v. Pape, 365 U.S. 167, 187–91, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84, 86 (C.A. 3, 1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970); Dawes v. Philadelphia Gas Commission, 421 F.Supp. 806, 818 (E.D.Pa.1976). Thus, the federal statutory claims against the defendant City and its Department of Public Safety and Bureau of Fire must be dismissed. Likewise, the section 1983 claims for damages asserted against the individual defendants in their official capacities must be dismissed, because any damage award would have to be satisfied out of the municipal treasury. See Monell v. Department of Social Services, 532 F.2d 259, 264–66 (C.A. 2, 1976), cert. granted, 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977); Blake v. Town of Delaware City, 441 F.Supp. 1189, 1195–96 (D.Del.1977); Patton v. Conrad Area School District, 388 F.Supp. 410, 416–17 (D.Del. 1975).[23]

---

**20.** Plaintiff also claims the imposition of 1000 hours penalty time subjected him to involuntary servitude in violation of the Thirteenth Amendment and 42 U.S.C. § 1994. Docket Item 1, par. 20(d). The Court considers this claim to be wholly without merit. Cf. Ahearn v. DiGrazia, 412 F.Supp. 638, 639 (D.Mass.), aff'd summarily, 429 U.S. 876, 97 S.Ct. 225, 50 L.Ed.2d 160 (1976).

**21.** Docket Item 1, pars. 26–29.

**22.** Id. pars. 31–34.

**23.** Section 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3), do authorize suits for injunctive and declaratory relief against the individual defendants in their official capacity. See Blake v. Town of Delaware City, supra, 441 F.Supp. at 1196 n. 22 and cases cited therein.

■ The plaintiff also asserts claims for damages and injunctive and declaratory relief against the defendant City directly under the Fourteenth Amendment.[24] In several recent decisions the Third Circuit Court of Appeals has made clear that it has not yet resolved the issue whether the Fourteenth Amendment gives rise to an implied cause of action for tort damages against a municipality. *See Patzig v. O'Neil*, 577 F. 2d 841, 850 (C.A. 3, 1978); *Mahone v. Waddle*, 564 F.2d 1018, 1023–24 (C.A. 3, 1977), *petition for cert. filed*, 46 U.S.L.W. 3420 (U.S. November 22, 1977) (No. 77–731); *Gagliardi v. Flint*, 564 F.2d 112, 115 n. 3 (C.A. 3, 1977), *petition for cert. filed*, 46 U.S.L.W. 3392 (U.S. November 7, 1977) (No. 77–657). At the same time, the Third Circuit has emphasized that the Fourteenth Amendment issue presents "a sufficiently substantial federal question" to vest the court with jurisdiction over a municipality under 28 U.S.C. § 1331 and to confer upon the court "the discretionary power to decide pendent state law claims against [a] municipality prior to addressing any constitutional claim." *Patzig v. O'Neil, supra*, 577 F.2d at 850. Indeed, the abovementioned cases and *Pitrone v. Mercadante*, 572 F.2d 98 at 100 (C.A. 3, 1978), reaffirm the long-standing preference for deciding cases on state law grounds and avoiding unnecessary decisions of constitutional law, whenever possible. *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909).

■ Whether the Fourteenth Amendment issue may be avoided in this case depends on whether the relief available under the pendent state law claims [25] is coextensive with that available under the Constitution. The Third Circuit discussed the importance of "coextensive relief" in *Patzig v. O'Neil, supra.*

In both *Pitrone* and *Mahone* the relief available under state law was coextensive with that sought under the fourteenth amendment. In this case as well the relief is co-extensive—both as to elements of proof and elements of damages—since the plaintiffs alleged a state law false arrest claim as well as a constitutional false arrest claim. (The elements of each are for the most part the same. Both would support punitive damages.)

In *Mahone* we recognized that "a case may arise in which a plaintiff claims the relief available under state law is not co-extensive with the relief available under the fourteenth amendment." 564 F.2d at 1026. This is not such a case either. Had the plaintiff not asserted the state false arrest claim, however, we would have been faced with a very different case, a case in which the relief sought under state law (negligence) would not have been co-extensive with the relief sought under the fourteenth amendment (unconstitutional arrest), either as to elements of proof or elements of damages. In such a situation we may well be required to reach the fourteenth amendment question. *See Mahone v. Waddle, supra*, 564 F.2d at 1052–56 (Garth, J., dissenting).

577 F.2d at 851, n. 11. The instant case does present a situation in which the relief under the state law claims is not coextensive with the relief sought under the Fourteenth Amendment. The state law claims are based on an alleged breach of a collective bargaining agreement and an alleged violation of the Delaware Minimum Wage Law. The elements of proof on the federal and state claims differ significantly. The elements of damages also differ. For example, only the federal claims provide a remedy for the injury plaintiff allegedly sustained as a result of his four and one-half month suspension without pay.

24. Jurisdiction is based on 28 U.S.C. § 1331; the complaint alleges that the amount in controversy exceeds the sum of $10,000. Docket Item 1, par. 1.

25. For purposes of this discussion, the Court will assume that pendent jurisdiction could properly be exercised over plaintiff's state law claims.

Therefore, this Court must determine whether a direct cause of action exists under the Fourteenth Amendment.

Although the Third Circuit has not yet decided the issue, this Court has held that the Fourteenth Amendment does not give rise to an implied cause of action for monetary damages against a municipality. *Blake v. Town of Delaware City, supra,* 441 F.Supp. at 1196–98. That holding controls this case and, for the reasons stated in the *Blake* opinion, the Court will grant summary judgment in favor of the defendant City and its agencies and the individual defendants in their official capacity with respect to the Fourteenth Amendment damage claims [26] asserted against them.

## III.  PROCEDURAL DUE PROCESS

In considering plaintiff's procedural due process claim, the Court must address two issues: (1) whether plaintiff was deprived of a property or liberty interest sufficient to invoke the procedural protections afforded by the Due Process Clause and, (2) if so, whether the procedures followed in this case satisfied the minimum requirements of the Constitution. As to the first question, the Court concludes that the four and one-half month suspension without pay deprived Hayes of a protected property interest in uninterrupted employment by the Bureau of Fire.

### 1.  *Property Interest.*

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). To be protected under the Due Process Clause a property interest must rise to the level of a "legitimate claim of entitlement." *Id.; Memphis Light, Gas and Water Division v. Craft,* —— U.S. ——, ——, 98 S.Ct. 1554, 1558, 56 L.Ed.2d 30 (1978). At the time of his suspension, Hayes was a permanent employee [27] of the Bureau of Fire. This Court has held that permanent employees of the Bureau of Fire have a constitutionally protected property interest in continued employment.[28]

The collective bargaining agreement, the Bureau's own Rules and Regulations, and the uncontroverted understanding of the Bureau of Fire Chief support [plaintiff's] assertion that the security of his position was not subject to whimsical vagaries of any sort, but vulnerable only on specified grounds shown through preordained procedures. In this context, [plaintiff's] interest in his continued employment was accorded such a high degree of recognition that it rose to the level of one entitled to constitutional protection.

*Aiello v. City of Wilmington,* 426 F.Supp. 1272, 1286–87 (D.Del.1976) (footnote omitted).

Defendants contend that, because the Trial Board, under Rule 206,[29] could

26. The plaintiff also seeks injunctive relief against the City of Wilmington based directly on the Fourteenth Amendment. The Supreme Court and other federal courts have long assumed that equitable relief can be granted against municipalities under the Fourteenth Amendment. *Mahone v. Waddle, supra,* 564 F.2d at 1056 (Garth, J., concurring and dissenting), *citing Griffin v. County School Board,* 377 U.S. 218, 232–34, 84 S.Ct. 1226, 12 L.Ed. 256 (1964). Since plaintiff unquestionably could obtain the same injunctive relief against the individual defendants in their official capacity under 42 U.S.C. § 1983, the Court finds it unnecessary to test that assumption in this case. *See* note 23 *supra.*

27. It is undisputed that plaintiff has been employed as a member of the Bureau of Fire since

August 20, 1960. Pre-Trial Order, par. c(1); Blackburn affidavit, par. 3 and exh. 3a. In *Aiello v. City of Wilmington,* 426 F.Supp. 1272, 1286 (D.Del.1976), which involved a similar factual situation, the Court noted that "a fireman is deemed to be a permanent employee, not susceptible to dismissal without cause, after successful completion of an initial six month probationary period."

28. *Aiello v. City of Wilmington,* 426 F.Supp. 1272, 1285–88 (D.Del.1976); *see Connell v. City of Wilmington,* C.A. No. 76–182, slip op. at 8 (D.Del. May 3, 1977) (unpublished opinion).

29. Rule 206 of the Rules and Regulations of the Bureau of Fire provides:

   206.  From the time of suspension the salary of the member so suspended shall be with-

have recommended that Hayes be paid the salary withheld from him during his suspension, no "final deprivation" occurred until after the Trial Board hearing on August 7, 1973. The argument is fatally flawed because it misconstrues the plaintiff's interest and confuses the question whether an interest is protected with the separate question of what process is due. Even if the Trial Board had recommended that Hayes be given the salary withheld, he still would have been deprived of the *use* of that money during the interim between the suspension and the Trial Board hearing. While such a deprivation is undoubtedly less severe than the permanent dismissal of an employee, for example, and that fact may be relevant in determining the appropriate form of hearing, the Supreme Court has held that "as long as a property deprivation is not *de minimis,* its gravity is irrelevant to the question whether account must be taken of the Due Process Clause." *Goss v. Lopez,* 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975). Courts consistently have held similar temporary deprivations to be worthy of protection. *See Sniadach v. Family Finance Corp.,* 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (Harlan, J., concurring); *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 606–08, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); L. Tribe, *American Constitutional Law* § 10.9, pp. 520–22 (1978).

held pending the trial of the person suspended, and the Trial Board shall recommend to the Commissioner the disposition of the salary of the suspended member as well as its recommendation on the charge.
Docket Item 38A, exh. A–13.

30. Plaintiff did not address the issue in his brief but the complaint also seems to assert deprivation of a liberty interest. Specifically, Hayes alleges that, as a result of the suspension, he "suffered embarrassment, [and] permanent injury to his reputation and his good name in the community." Docket Item 1, par. 21. Defendants argue persuasively that the claimed injury to reputation does not amount to loss of a protected liberty interest, but the Court finds it unnecessary to decide the issue. None of the cases cited by defendants involves a factual situation identical to this one and resolution of the issue would entail a voyage into an area

Having determined that plaintiff's suspension infringed a property interest constitutionally protected against deprivation without procedural due process,[30] the Court must determine whether the procedures followed in this case satisfied the requirements of the Fourteenth Amendment. The fundamental requirements of due process are notice and an opportunity to be heard and these must be provided "at a *meaningful time* and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), *quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1967) (emphasis supplied). Plaintiff has not challenged the sufficiency of the procedures accorded him at the August 7, 1973 Trial Board hearing; rather, he complains that those procedures were not provided at a meaningful time. Plaintiff contends he had a right to an evidentiary hearing either prior to his suspension on March 23, 1973 or soon thereafter.

At this juncture, the Court notes that the procedural due process issue is presently before it on the parties' cross motions for summary judgment. A summary judgment should be granted only if taking the non-movant's allegations as true and drawing all inferences in his favor, the court is convinced from its review of the evidential sources available that no genuine issue as to a material fact remains for trial, and that the mov-

where the law is far from clear. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bishop v. Wood,* 426 U.S. 341 (1976); *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). More importantly, because the Court has already found that Hayes was deprived of a protected property interest, recognition of a separate liberty interest would be relevant only in the context of assessing the gravity of the private interest affected by the suspension for purposes of determining the content of the process due Hayes. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The limited embarrassment and damage to reputation plaintiff allegedly suffered was a natural byproduct of his suspension. Thus, for all relevant purposes plaintiff's property interest subsumes his putative liberty interest.

ing party is entitled to judgment as a matter of law. *Scott v. Plante,* 532 F.2d 939, 945 (C.A. 3, 1976); *see Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (C.A. 3, 1976). The standard is the same for cross motions for summary judgment: neither motion may be granted unless one of the movants is entitled to judgment as a matter of law upon facts that are not genuinely disputed. *Manetas v. International Petroleum Carriers, Inc.,* 541 F.2d 408 (C.A. 3, 1976); *Jack v. Nationwide Mutual Insurance Co.,* C.A. No. 75–304, slip op. at 2 (D.Del. March 8, 1978). In this case, genuine factual disputes exist concerning the reasons for the postponement of the April 4, 1973 Trial Board hearing, the reasons for the long delay between the postponement and the actual hearing, and the extent to which Hayes sought a more timely hearing. Plaintiff avers that the defendants were fully responsible for the length of his suspension; defendants allege that, if Hayes had demanded a hearing before August 7, 1973, he would have received one promptly. There is no dispute, however, concerning the events which transpired before defendant Blackburn postponed the hearing scheduled for April 4, 1973. Thus, plaintiff would be entitled to summary judgment in his favor if, as a matter of law, the procedures used in connection with the suspension of plaintiff for the ten-day period originally contemplated violated his due process rights. The Court proceeds to consider that issue.

2. *Presuspension Procedures.*

The Supreme Court has "frequently emphasized that '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 86, 98 S.Ct. 948, 953, 55 L.Ed. 2d 124 (1978), *quoting Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). In each case "the timing and content of the notice and the nature of the hearing will depend upon an appropriate accommodation of the competing interests involved." *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). The Court further elucidated the requisite balancing process in *Mathews v. Eldridge, supra,* 424 U.S. at 335, 96 S.Ct. at 903, stating:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, e. g., *Goldberg v. Kelly, supra,* 397 U.S. [254] at 263–271, [90 S.Ct. [1011] at 1018–1022, 25 L.Ed.2d 287].

■ After considering the competing interests involved in the original decision to suspend Hayes without pay pending a prompt Trial Board hearing, the Court concludes that the procedures defendants used in effecting the suspension satisfied the requirements of the Due Process Clause. The Court, therefore, rejects plaintiff's argument that, in all but emergency circumstances, a formal hearing must precede the temporary suspension without pay of a permanent employee of the Bureau of Fire.[31]

■ The private interest affected by the defendants' action in this case was significant; plaintiff Hayes was deprived temporarily of his principal source of income. The interests infringed in cases in which the courts have required a pre-deprivation evidentiary hearing have been more severe, however. Hayes suffered only a temporary loss compared to the permanent dismissals from employment involved in several of the

---

**31.** In *Aiello v. City of Wilmington, supra,* Judge Schwartz expressly reserved decision on this issue, limiting his holding to the "emergency" facts of that case.

cases he cites to support his argument for a presuspension evidentiary hearing.[32] In the principal case, *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31, 38 (C.A. 3, 1974), the Court held that due process required a hearing prior to termination because

> there is a substantial difference in the position of the parties once termination has actually occurred. First, the employee, cutoff from the payroll, is greatly disadvantaged in his ability to pursue the hearing remedy. He may be forced by the necessity for survival to seek other employment which will foreclose the pursuit of reinstatement. Second, the institution will have made substitute teaching arrangements, thus introducing into the hearing consideration of the interests of other faculty members. This inevitability will increase whatever tendency may already exist for the hearing officials to defer to the administration's decision. (Emphasis supplied).

A temporary suspension does not have the same tendency to undermine the value of a post-deprivation hearing. Furthermore, if Hayes had prevailed before the Trial Board, he might have recovered all or part of the salary withheld from him during his suspension.[33] Thus, his interest was limited to the uninterrupted receipt of his salary pending final disposition of the charges against him. The Supreme Court has considered similarly contingent deprivations on several occasions,[34] but only in the case of a welfare recipient, *Goldberg v. Kelly,* 397 U.S. 254, 263–64, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), "has the Court held that due process requires an evidentiary hearing prior to a temporary deprivation." *Mathews v. Eldridge, supra,* 424 U.S. at 340, 96 S.Ct. at 905.

The degree of potential deprivation here pales in contrast to that involved in *Goldberg.* The deprivation pending resolution of the controversy in *Goldberg* threatened to "deprive an *eligible* recipient of the very means by which to live while he waits." *Goldberg v. Kelly, supra,* 397 U.S. at 264, 90 S.Ct. at 1018 (emphasis in original). In this case plaintiff held two jobs prior to being suspended and he continued to work on a part-time basis at his second job throughout the suspension period.[35] Thus, something less than a full evidentiary hearing would have satisfied the demands of presuspension due process if a prompt Trial Board hearing had been provided.[36] *See Mathews v. Eldridge, supra,* 424 U.S. at 340–43, 96 S.Ct. 893; *Arnett v. Kennedy, supra,* 416 U.S. at

**32.** *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (C.A. 3, 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *Anapol v. University of Delaware,* 412 F.Supp. 675 (D.Del.1976); *Muir v. County Council of Sussex County,* 393 F.Supp. 915 (D.Del.1975); *Young v. Hutchins,* 383 F.Supp. 1167 (N.D.Fla.1974), *aff'd in part and rev'd in part sub nom. Thurston v. Dekle,* 531 F.2d 1264 (C.A. 5, 1976).

**33.** *See* Rule 206 set forth at note 29 *supra.*

**34.** *See, e. g., Mathews v. Eldridge, supra,* 424 U.S. at 340, 96 S.Ct. 893 (termination of disability benefits under the Social Security Act); *Arnett v. Kennedy,* 416 U.S. 134, 146, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (plurality opinion) (removal of nonprobationary federal employee); *Goldberg v. Kelly,* 397 U.S. 254, 263–64, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare benefits); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 341–43, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment of wages).

**35.** Blackburn dep., exh. 13 (letter from Hayes to Blackburn, dated April 4, 1973).

**36.** At this point, the Court expresses no opinion on the need for a presuspension evidentiary hearing in connection with the extended unpaid suspension plaintiff actually endured. It is noteworthy, however, that from April 4, 1973 until the date of the hearing, August 7, 1973, Hayes could have sought temporary employment to ameliorate the financial loss occasioned by his suspension. In this respect, Hayes suffered a lesser degree of deprivation than the plaintiff in *Aiello v. City of Wilmington, supra,* who may have been effectively precluded from pursuing alternate sources of employment during most of his suspension by the Bureau of Fire's twice-daily reporting requirement. 426 F.Supp. at 1291; *see* note 16 *supra.* Because that requirement was eliminated on April 4, 1973, it affected Hayes for only ten days. The possibility of substitute employment reduces the severity of the deprivation suffered by Hayes. *Compare Arnett v. Kennedy, supra, with Goldberg v. Kelly, supra.*

169–70, 94 S.Ct. 1633 (Powell, J., concurring).

To determine whether the Constitution requires more than the informal confrontation provided in this case, however, the Court must also consider the other two factors identified in *Mathews v. Eldridge, supra:* the risk of an erroneous deprivation and the governmental interest. The risk of an erroneous deprivation was insignificant. Chief Blackburn suspended Hayes pursuant to Rule 205 [37] on March 23, 1973 for allegedly reporting five hours and twenty minutes late for duty the day before and failing to make a complete statement explaining his whereabouts.[38] Hayes has never denied either of these charges. Lieutenant Donovan directly observed the two infractions of the Rules and orally informed Hayes that he intended to file a charge against him for each of them. In addition, Lieutenant Donovan gave plaintiff an opportunity to explain his actions and to put them in the light most favorable to him.[39] It is true, as plaintiff emphasizes, that he had no direct communication with Chief Blackburn, the suspending officer, prior to the suspension and that the procedure used did not formally provide for such contact. On the other hand, nothing in the record indicates plaintiff was precluded in any way from communicating with Chief Blackburn before the suspension became effective. In light of the limited nature of the factual issues raised by the two charges filed against Hayes on March 22, 1973, the Court concludes the procedures used prior to the suspension on those charges [40] did not create a significant risk of error.

On the other side of the scale, defendant Bureau of Fire is charged with the responsibility of protecting the lives and property of the citizens of the City of Wilmington. To discharge its duty effectively the Bureau of

---

**37.** Rule 205 provides:

205. When there is an alleged violation of the Rules and Regulations and, in their opinion, such action is for the best interest of the Department of Public Safety or required by the public interest the Commissioner, the Chief, or the Deputy Chief, in the absence of the Chief, may, temporarily, and pending final hearing of the charge, suspend and remove from active duty the person or persons so charged.

Docket Item 38A, exh. A–13. At his deposition, Chief Blackburn testified that he discussed the charges against Hayes with Commissioner Levine before ordering the suspension. He denied that Hayes' suspension was extraordinary, explaining: "He was suspended because of the amount of time [he was late], the five hours and twenty minutes, and not cooperating and telling his whereabouts." Blackburn dep., pp. 8, 14, 15. Commissioner Levine corroborated Blackburn's testimony in this regard. Levine dep., pp. 3–4. Based on the record, the Court is convinced that Chief Blackburn had the authority to suspend Hayes under Rule 205 and that he acted within the bounds of the discretion afforded him by that Rule in this case.

**38.** Blackburn dep., pp. 8, 14 and exhs. 1, 2. The letter of suspension delivered to Hayes also listed two other charges that allegedly had been pending against him for some time, but it appears undisputed that those charges did not form the basis for the suspension. *See id.,* pp. 8–14, exh. 3; Pre-Trial Order, par. 5; note 10 *supra.*

**39.** Hayes stated at his deposition that he gave Lieutenant Donovan the following reasons for not wanting to make a more complete statement:

Because when you send a letter in the Fire Department, at least at that time [,] . . . they [sic] were there for everybody to read. I don't think it is anything to be proud of to spend the night in jail. And that is the reason I didn't make a complete statement. Also, I did not make a false statement. I put down I was unavoidably detained and I got there as soon as I could. Because you are also supposed to be fired for lying.

Hayes dep., pp. 34–35.

**40.** On April 2, 1973, the day the original hearing was postponed, a third charge was filed against Hayes. Assistant Chief Barrett Conner charged him with violating Rule 169, Section 23 of the Rules and Regulations which requires firemen to act according to "the customary rules of good behavior observed by law-abiding and self-respecting citizens." The charge stemmed from Hayes' arrest for driving under the influence of alcohol and his uncooperative and belligerent attitude toward the arresting officer. Blackburn affidavit, exh. 3e. Although the risk of error may have been greater with respect to this charge, the record clearly indicates that it did not influence the initial decision to suspend Hayes pending a reasonably prompt Trial Board hearing.

Fire must be able to depend on its firefighters being at their duty stations at the assigned times or, at the very least, notifying their superiors when they cannot report. Thus, defendants' interest is a weighty one disserved by a requirement of elaborate presuspension procedures or the payment of wages to misbehaving employees. *Thurston v. Dekle,* 531 F.2d 1264, 1272 (C.A. 5, 1976). As Justice Powell stated in *Arnett v. Kennedy, supra,* 416 U.S. at 168, 94 S.Ct. at 1651:

> [T]he Government, as an employer, must have . . . the prerogative to remove employees whose conduct hinders efficient operation and to do so with dispatch. Prolonged retention of a disruptive or otherwise unsatisfactory employee can adversely affect discipline and morale in the work place, foster disharmony, and ultimately impair the efficiency of an office or agency. Moreover, a requirement of a prior evidentiary hearing would impose additional administrative costs, create delay, and deter warranted discharges. Thus, the Government's interest in being able to act expeditiously to remove an unsatisfactory employee is substantial. (Footnote omitted).

Plaintiff reported over five hours late and then refused to explain his absence in contravention of a departmental general order, because he feared a candid explanation would cause him embarrassment. The failure of the Bureau to react promptly to such disregard for departmental Rules and Regulations could be expected to have a demoralizing effect on other members of the Bureau of Fire. Thus, the summary suspension of Hayes for a relatively brief period would have furthered a substantial governmental interest.

■ After weighing the factors discussed above, the Court concludes that the informal procedures followed in this case met the requirements of due process for a short suspension. To the extent this holding conflicts with the Seventh Circuit's decision in *Muscare v. Quinn,* 520 F.2d 1212 (C.A. 7, 1975), *cert. dismissed as improvidently granted,* 425 U.S. 560, 96 S.Ct. 1752, 48 L.Ed.2d 165 (1976), the Court declines to follow that decision. In *Muscare* the Court held that a fireman suspended for 29 days for allegedly violating departmental hair regulations had a right to a presuspension hearing where he could be fully informed of the reasons for the proposed suspension and challenge their sufficiency. 520 F.2d at 1215–16. The suspension in *Muscare* was for a definite period; otherwise, the two cases are virtually indistinguishable. There is one major difference from an analytical perspective, however: *Muscare v. Quinn* was decided without the benefit of the Supreme Court's opinion in *Mathews v. Eldridge, supra.* Consequently, *Goss v. Lopez, supra,* represented the controlling precedent.[41]

In *Goss v. Lopez* the Supreme Court recognized the well established exception to the presuspension hearing requirement for "emergency" cases in which "some valid government interest is at stake that justifies postponing the hearing until after the event." *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *see Goss v. Lopez, supra,* 419 U.S. at

41. *See Muscare v. Quinn, supra,* 520 F.2d at 1215–16. As a result, it is arguable that the Court in *Muscare* gave too much weight to the private interest affected by the suspension. For example, the Court likened the loss suffered by a government employee temporarily suspended without pay to a welfare recipient whose aid has been discontinued. 520 F.2d at 1215 n. 3. *Mathews v. Eldridge, supra,* 424 U.S. at 339–43, 96 S.Ct. 893, carefully distinguished the potential degree of deprivation in the two situations and held the difference significant for determining the adequacy of predeprivation procedural safeguards. Furthermore, while the Supreme Court expressed no opinion on the efficacy of the holding in *Muscare v. Quinn, supra,* when it dismissed certiorari in that case as improvidently granted, the Court explicitly noted that the plaintiff had a right to a post suspension hearing before the Civil Service Commission and that the Commission had the authority to award backpay and to order the deletion of the suspension from the employee's service record. 425 U.S. at 562 n. 3, 96 S.Ct. 1752. In *Mathews v. Eldridge, supra,* the Court considered similar facts highly relevant to a determination of the process due in a particular situation. *See* 424 U.S. at 339–43, 96 S.Ct. 893.

582–83, 95 S.Ct. 729. The Court held due process normally requires notice and a rudimentary hearing prior to a short suspension of a student but that

> [s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable . . . .
> *Id.*

In this case, plaintiff argues that, absent an equally compelling governmental interest, defendants had an obligation to provide Hayes with a presuspension hearing. This position ignores the refinements to due process analysis introduced by *Mathews v. Eldridge, supra.* In *Mathews* and a few other recent cases the Court has upheld governmental procedures denying hearings prior to important deprivations where the government interest has been less urgent than that alluded to in *Goss* based on a showing that the alternative procedures offered by the government were likely to produce substantially accurate results.[42] The Supreme Court acknowledged this development in its most recent decision in the procedural due process area, *Memphis Light, Gas and Water Division v. Craft ("MLG&W")*, —— U.S. ——, ——, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978), observing:

> Ordinarily, due process of law requires an opportunity for "some kind of hearing" prior to the deprivation of a significant property interest. See *Boddie v. Connecticut*, 401 U.S. 371, 379, [91 S.Ct. 280, 28 L.Ed.2d 113] (1971). On occasion, this Court has recognized that where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination, government may act without providing additional "advance

procedural safeguards," *Ingraham v. Wright*, 430 U.S. 651, 680, [97 S.Ct. 1401, 51 L.Ed.2d 711] (1977); see *Mathews v. Eldridge, supra,* 424 U.S. at 339–349, 96 S.Ct. 893. (Footnote omitted).

The MLG&W case involved the termination of utility services for nonpayment of a bill. The Court found the exception to the prior hearing requirement inapplicable, because "the cessation of essential services for any appreciable time works a uniquely final deprivation . . . and the probability of error in utility cut-off decisions is not so insubstantial as to warrant dispensing with all process prior to termination." *Id.* (citation and footnote omitted). The temporary suspension in the case *sub judice* did not work "a uniquely final deprivation" and the risk of error with respect to the March 23, 1973 suspension was minimal. Therefore, the Court holds that the informal presuspension procedures used here satisfied the requirements of due process regarding a short suspension pending a prompt post-suspension evidentiary hearing.

■ However, Hayes remained on suspension for four and one-half months. Thus, the question remains whether, on the facts of this case, the extensive delay between Hayes' suspension and the Trial Board hearing effectively denied him his right to due process. The cases that have upheld summary predeprivation procedures have involved situations in which the potential length or severity of the deprivation did not indicate the likelihood of a serious loss.[43] In a case concerning suspension of unemployment compensation benefits, the Supreme Court stated:

> Prompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility determinations. Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process.

---

**42.** L. Tribe, *American Constitutional Law* § 10–14, pp. 348–49; *see Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Mathews v. Eldridge, supra; Arnett v. Kennedy, supra* (Powell, J., concurring).

**43.** *See Memphis Light, Gas and Water Division v. Craft, supra,* —— U.S. at ——, 98 S.Ct. at 1564, and cases cited therein.

*Fusari v. Steinberg*, 419 U.S. 379, 389, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975).[44]

In a factual context almost identical to that presented here, this Court in *Aiello v. City of Wilmington, supra*,[45] held that a significant delay in providing a post-suspension hearing could rise to the level of a constitutional deprivation. The following language from the *Aiello* opinion is especially apposite here:

Timing . . . is an important element of due process. . . . [T]he basic right which the courts have been seeking to protect is the right to a hearing "as soon as it is practicable" after a suspension has occurred, when legitimate considerations have excused the failure to provide a hearing prior to the actual suspension. However, this timing component of procedural due process, where a suspension precedes a hearing, must of necessity be flexible. A finding of a constitutional deprivation should be made after consideration of such factors as (1) the actual duration of delay between the suspension and hearing; (2) the degree of potential deprivation resulting from the suspension; (3) the adequacy of administrative review procedures utilized prior to the suspension; (4) the adequacy of the post suspension hearing . . .; and

(5) the extent to which the individual suspended contributed to or otherwise knowingly and wilfully acquiesced in the delay.[43]

[43] The above listing is in no way intended to be exhaustive.

426 F.Supp. at 1291.

As in *Aiello*, whether the delay in this case between the suspension and the post-suspension hearing resulted in a violation of Hayes' due process rights involves essentially a factual determination. However, several of the material facts are disputed. For example, plaintiff alleges that he asked Chief Blackburn for a prompt Trial Board hearing several times between March 24, 1973 and August 7, 1973.[46] Blackburn testified at his deposition that he could not recall ever being asked by Hayes to accelerate the Trial Board hearing.[47] The parties also disagree as to the reason for the postponement of the hearing scheduled for April 4, 1973 and whether or not Hayes acquiesced in the delay. When asked at his deposition if he knew why the hearing was postponed, plaintiff testified:

Only because, I guess, they were going to add a new charge. But nobody told me, so I don't know. (Docket Item 21, p. 14).

**44.** *Accord Mathews v. Eldridge, supra*, 424 U.S. at 341, 96 S.Ct. 893; *Behan v. City of Dover*, 419 F.Supp. 562, 568 (D.Del.1976), *aff'd without opinion*, 559 F.2d 1207 (C.A. 3, 1977).

**45.** The plaintiff, Ronald Aiello, a permanent employee of the Bureau of Fire, was suspended indefinitely without pay for engaging in conduct unbecoming a fireman and a self-respecting citizen. He had been arrested by the police, who had found him drunk and lying face down on the floor of a retail establishment he had broken into. 426 F.Supp. at 1275–76, 1278. Before he suspended Aiello, an Assistant Chief of the Bureau of Fire confronted him at least twice in the "lockup" at City Hall, seeking a statement concerning the incident. Aiello responded only that "it was a physical and mental problem." *Id.* at 1276. The suspension lasted 98 days and, as in this case, much of the delay resulted from defendants' practice of deferring a Trial Board hearing until after the disposition of any related criminal charges pending against the accused.

In *Aiello v. City of Wilmington, supra*, Judge Schwartz held that the "emergency" facts of

that case justified plaintiff's summary suspension pending a Trial Board hearing.

Due process does not require a governmental bureau charged with the protection of life and property to retain a member on active duty in the face of indications that he may be a danger to himself, others, or their property when the member, upon informal confrontation, fails to proffer an explanation or scintilla of reassurance concerning the situation in which he is found.

426 F.Supp. at 1289. Nevertheless, the Court refused to grant summary judgment in defendants' favor, because

[w]hile a rudimentary confrontation may satisfy the dictates of due process for the purpose of a short suspension in an "emergency" case, more may be required prior to an extended unpaid suspension of the type Aiello underwent. *Id.*

**46.** Hayes dep., pp. 14–15.

**47.** Blackburn dep., pp. 56–57.

Defendants allege that the postponement resulted from a general departmental practice of deferring a Trial Board hearing until after disposition of any pending criminal charges related to the same conduct,[48] and that plaintiff was aware of this practice. Given these disputed issues of material fact, the Court must deny each of the cross-motions for summary judgment on the issue whether the delay in affording Hayes a post-suspension evidentiary hearing deprived him of due process.

## IV. VAGUENESS AND OVERBREADTH CLAIMS

The Trial Board found plaintiff guilty of violating Rule 169, Section 23 of the Rules and Regulations and imposed a sanction of 850 penalty hours for that offense. Rule 169, Section 23 requires firefighters to "[b]e governed by the customary rules of good behavior observed by law abiding and self-respecting citizens" and to conduct themselves at all times "in a manner that will not bring discredit to themselves or to the Department." Plaintiff contends the Rule is invalid on its face because it is unconstitutionally vague and overbroad. In the circumstances of this case, the Court disagrees.

A statute or regulation is unconstitutionally vague if it forbids or requires "the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). However, one to whose conduct a regulation clearly applies does not have standing to challenge it for vagueness. *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).[49] In *Aiello v. City of*

*Wilmington, supra,* the Court held the plaintiff had no standing to challenge Rule 169, Section 23, because he had engaged in "hard core conduct which any reasonable person must know would be cause for discipline or dismissal from employment." 426 F.Supp. at 1293 & nn. 51–52, *quoting Herzbrun v. Milwaukee County,* 504 F.2d 1189, 1193 (C.A. 7, 1974).

Hayes' vagueness claim must fail for the same reason. Hayes admitted that he was drinking on the night of March 22, 1973 and that he was driving when stopped by a Delaware state policeman.[50] Plaintiff was charged with driving under the influence of alcohol but ultimately pleaded guilty to a reduced charge of reckless driving. Without belittling the gravity of Hayes' offense, the Court observes that the conduct that resulted in the arrest of the plaintiff in *Aiello*[51] falls more clearly within the proscription against bringing "discredit upon . . . the Department" than does the conduct which led to Hayes' arrest. However, it is unnecessary to decide whether the plaintiff's pre-arrest conduct alone clearly violated Rule 169, Section 23, because several other factors contributed to the Trial Board's finding of guilt on that charge. Specifically, the record indicates that plaintiff attempted to use his position as a firefighter to obtain leniency from the arresting officer and that he repeatedly directed abusive and profane comments toward the arresting officer.[52] In addition, plaintiff refused to cooperate with the police, declining several times to take a test designed to determine the amount of alcohol in his system.[53] As a uniformed public servant, plaintiff was required by the regulation at issue here to conduct himself as a "law abiding and self-respecting" citizen at all times. While the outermost

48. Blackburn dep., p. 30.

49. *See also Allen v. City of Greensboro,* 452 F.2d 489, 491 (C.A. 4, 1971).

50. Hayes dep., pp. 26–27.

51. *See* note 45 *supra.*

52. *See* Docket Item 38A, exh. A–7, p. 2. Plaintiff has admitted that he said to the Delaware state trooper, "I'm a fireman, give me a break" or words to that effect and that he called the officer a "prick". Hayes dep., pp. 27–28.

53. Docket Item 38A, exhs. A–3, A–7, p. 2; Blackburn dep., exh. 5.

boundaries of this requirement and the further command of Rule 169, Section 23 to avoid bringing disrespect on the Department may be imprecise,[54] the Court finds that Hayes' behavior, considered as a whole, clearly violated that Rule and that he had fair notice that it would.

█ The Court also rejects plaintiff's claim that Rule 169, Section 23 is overbroad and therefore unconstitutional on its face. A regulation is overbroad if it "sweeps within its prohibitions that which is protected under the first and fourteenth amendments." *Gasparinetti v. Kerr*, 568 F.2d 311, 315 (C.A. 3, 1977), *cert. denied*, —— U.S. ——, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978). The fact that plaintiff's conduct was unprotected[55] presents no obstacle to his overbreadth claim, for the Supreme Court

> has altered its traditional rules of standing to permit—*in the First Amendment area*—'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' *Dombrowski v. Pfister* [380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)].

**54.** The cases cited by plaintiff holding similarly worded regulations to be unconstitutionally vague are inapposite because the regulations in question were vague as applied to the plaintiffs' conduct, without regard to their potentially vague application to others. *See Bence v. Breier*, 501 F.2d 1185, 1193 (C.A. 7, 1974); *Flynn v. Giarrusso*, 321 F.Supp. 1295, 1299–1300 (E.D.La.1971). In *Bence v. Breier, supra*, the plaintiffs, who were officers of the collective bargaining agent for the members of a police department, sent a letter to the City's chief labor negotiator expressing their intent to press a particular bargaining demand and requesting investigation of another contractual matter. 501 F.2d at 1186–87. They were reprimanded for violating a regulation prohibiting "conduct unbecoming a member [of the Police Department] and detrimental to the service." *Id.* at 1187. The questionable applicability of the regulation to the conduct complained of is apparent. The regulation at issue in *Flynn v. Giarrusso, supra*, required a police officer to "act in a manner which will not reflect discredit upon himself or the Department." 321 F.Supp. at 1299. The provision provided no

*Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (emphasis supplied). The Court created this exception because "the First Amendment needs breathing space [to survive]" and, unless drawn with narrow specificity, a regulation in this area can have a chilling effect on the exercise of speech and expression. *Id.* at 611–12, 93 S.Ct. at 2915.

█ In *Broadrick v. Oklahoma, supra*, the Court noted that "overbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment, but doing so in a neutral, noncensorial manner." 413 U.S. at 614, 93 S.Ct. at 2917. Thus, the Court held "where conduct and not merely speech is involved . . . *the overbreadth of a statute must not only be real, but substantial as well*, judged in relation to the statute's plainly legitimate sweep." Rule 169, Section 23 covers conduct as well as speech. Thus, in *Aiello v. City of Wilmington, supra*, this Court applied the above quoted standard to that Rule and concluded:

> There is little doubt that in the present case Rule [ ] . . . 169.23 legitimately appl[ies] to a substantial amount of conduct or number of activities which

notice to the plaintiff that writing an article critical of certain operations of the police department fell within its proscriptions. *Id.* at 1299–1300.

**55.** Plaintiff has never argued that his conduct in this case was protected under the First Amendment nor could he. The Defendant City and its Department of Public Safety have a significant interest in regulating some speech of firefighters in order to promote efficiency, maintain morale and instill public confidence in the Bureau of Fire. *Gasparinetti v. Kerr, supra*, 568 F.2d at 315; *id.*, at 321–22 (Rosenn, J., concurring and dissenting); *see Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). This interest is sufficient to justify a regulation prohibiting firefighters from using their public position to gain preferential treatment from law enforcement officers. The act of directing profane and insulting remarks to a state trooper properly may be proscribed as "fighting words." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1941).

properly may be proscribed, and the overbreadth, if any, of the rules is marginal. 426 F.Supp. at 1294 (footnote omitted). The Court considers that holding controlling in the instant case and, therefore, refuses to invalidate Rule 169, Section 23 on grounds of overbreadth.

In so holding, the Court rejects plaintiff's argument that the Third Circuit's recent decision in *Gasparinetti v. Kerr, supra*, casts serious doubt on the continued viability of *Aiello.* The three regulations found to be constitutionally overbroad in *Gasparinetti* prohibited policemen from criticizing or making "derogatory reference to Department orders," censuring, without authorization, other Department members concerning official transactions, and publicly disparaging or commenting unfavorably or disrespectfully on the official action of a superior officer or the Department. *Gasparinetti v. Kerr, supra*, 568 F.2d at 314. Because these regulations restricted speech by police officers directly and in a censorial fashion, they were subject to a most exacting overbreadth scrutiny. *See id.* at 316–18; *Broadrick v. Oklahoma, supra*, 413 U.S. at 615–16, 93 S.Ct. 2908. Rule 169, Section 23, on the other hand, regulates conduct primarily and, to the extent it regulates speech at all, it does so in an even-handed and neutral manner. The Ninth Circuit recently upheld a regulation similar to Rule 169, Section 23, against an overbreadth challenge on the ground that it applied to a wide range of unprotected activity.[56] It is noteworthy that the *Gasparinetti* court found the Ninth Circuit's decision distinguishable because it involved a regulation that "proscribes *conduct,* and is not a direct prohibition on speech." 568 F.2d at 317–18 n. 19 (emphasis in original).[57] In sum, this Court's opinion in *Aiello v. City of Wilmington, supra*, is completely consistent with *Gasparinetti v. Kerr, supra.*

## V. SUBSTANTIVE DUE PROCESS CLAIM

Plaintiff contends that the defendants' practice of giving a firefighter who has been assessed penalty hours an *option* to work those hours without pay in addition to his regular hours or to undergo a suspension without pay for the same number of hours is so unreasonable as to be violative of substantive due process. This contention is based on two faulty premises: (1) that the option is illusory because firefighters rarely would choose to be suspended without pay; and (2) that the sanction of working without pay violates the public policy embodied in the Delaware Minimum Wage Law and is therefore arbitrary. Given the undisputed fact that in appropriate circumstances the Bureau of Fire may suspend a firefighter without pay, plaintiff's assertion that a firefighter, if given a choice, generally would choose to work off the suspension time rather than be suspended merely underscores the practical value of the option. Thus, plaintiff's contention that the option is somehow a sham designed to force people to work for nothing is wholly without merit. The Court also rejects the argument that the sanction of working without pay *per se* contravenes public policy and violates due process. To prevail on this issue plaintiff must demonstrate that there is no rational connection between that form of discipline and the Bureau of Fire's interest in protecting persons and property from the danger of fire. *See Kelley v. Johnson,* 425 U.S. 238, 247, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976). The option at issue here enables the Bureau of Fire to avoid placing an inappropriate economic burden on a firefighter's family by way of a suspension and to reduce the risk of a shortage of available manpower in an emergency. Thus, the Court finds that the defendants' practice of permitting disciplined employees to work extra hours without pay in lieu of

**56.** *Kannisto v. City and County of San Francisco,* 541 F.2d 841 (C.A. 9, 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775 (1977).

**57.** Two other cases relied upon by plaintiff are distinguishable on the same ground. *Compare id. with Muller v. Conlisk,* 429 F.2d 901 (C.A. 7, 1970) *and Flynn v. Giarrusso, supra; see Gasparinetti v. Kerr, supra,* 568 F.2d at 17–18 n. 19.

being suspended is rationally related to the defendants' interest in protecting persons and property from the danger of fire. *See Ahearn v. DiGrazia*, 429 U.S. 876, 97 S.Ct. 225, 50 L.Ed.2d 160 (1976), *summarily aff'g* 412 F.Supp. 638 (D.Mass.1976) (three judge court); *Aiello v. City of Wilmington, supra*, 426 F.Supp. at 1295 n. 64. Accordingly, the Court will enter summary judgment in favor of the defendants on this issue.

■ Plaintiff's related claim that the sanction of 1000 penalty hours imposed upon him was unreasonably severe and therefore violative of his right to substantive due process is not ripe for summary judgment.[58] Genuine issues of material fact exist concerning that claim. For the same reason the Court must deny defendants' motion for summary judgment on whether the individual defendants are entitled to official immunity with respect to the actions complained of by Hayes.

## VI. STATE LAW CLAIMS

Finally, plaintiff requests this Court to exercise its pendent jurisdiction over two state law claims. The first claim alleges that the penalties imposed upon Hayes, especially the penalty hours and the forfeiture of various fringe benefits during the period of his suspension, constituted a breach of the collective bargaining agreement entered into by the defendant City and plaintiff's union.[59] The other state law claim asserts that the defendant City violated the Delaware Minimum Wage Law, 19 Del.C. § 901 *et seq.*, by refusing to pay him for the 1000 penalty hours he worked.[60]

■ A federal court may exercise pendent jurisdiction over a state law claim only if (1) the underlying federal claim is substantial enough to support federal jurisdiction and (2) the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The first prerequisite is satisfied here,[61] but the Court doubts the existence of a common nucleus of operative fact. The few facts that pertain to both the state and federal claims relate to the nature and magnitude of the penalty and are largely undisputed. Resolution of the contract claim will require construction of several clauses of the collective bargaining agreement, none of which are relevant to the federal claims. Regarding the minimum wage law claim, defendants argue that, by choosing to work the penalty hours, plaintiff effectively agreed to work longer hours for the same amount of pay in lieu of undergoing a lengthy unpaid suspension. The Delaware Minimum Wage Law requires every employer to pay wages at the rate of not less than $1.60 an hour. 19 Del.C. § 902 (1975). Thus, evidence may be adduced at trial concerning plaintiff's effective hourly rate of pay during each pay period based on the total number of hours he worked during that period. In contrast, the remaining federal claim concerning the penalty imposed merely requires a determination of whether the penalty that plaintiff received was unreasonable or arbitrary in light of all the circumstances.

*Board of Education*, 534 F.2d 1094 (C.A. 3, 1976).

58. Defendants contend that the plaintiff's failure to pursue either the appeal or grievance procedures set forth in the collective bargaining agreement with respect to his claim that the penalty was unreasonable precludes him from seeking relief on that claim in this Court. The argument is not persuasive because the exhaustion of state administrative remedies is not required prior. to the commencement of an action in federal court under 42 U.S.C. § 1983. *See Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *McNeese v. Board of Education*, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Hochman v.*

59. Docket Item 1, pars. 26–30.

60. *Id.*, pars. 31–34.

61. *See Patzig v. O'Neil, supra*, 577 F.2d at 841, 850; *Pitrone v. Mercadante, supra*, 572 F.2d at 100; *Mahone v. Waddle, supra*, 564 F.2d at 1022; *Gagliardi v. Flint, supra*, 564 F.2d at 115–16. The Court notes that the claims for injunctive and declaratory relief against the City have not been dismissed. *See* note 26 *supra*.

Nevertheless, it is unnecessary to decide whether the Court has the *power* to determine plaintiff's pendent state claims, because pendent jurisdiction is a doctrine of discretion [62] and the Court has determined not to entertain those claims. Regarding the proper exercise of discretion, *United Mine Workers v. Gibbs, supra,* teaches that:

> Needless decision of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. . . . Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

383 U.S. at 726–27, 86 S.Ct. at 1139. In the case *sub judice,* these considerations counsel strongly against exercising jurisdiction over plaintiff's two state law claims. Determination of the Delaware Minimum Wage Law claim will require resolution of several novel questions of state law, such as whether defendant City is an employer within the meaning of the law. *See Aiello v. City of Wilmington, supra,* 426 F.Supp. at 1295. These issues are better left to the state courts for decision in the first instance.[63] Plaintiff's breach of contract claim centers on the propriety of several elements of his penalty under the governing collective bargaining agreement. Construction of the clauses of the agreement drawn into question may well necessitate an inquiry into the intent of the parties to the contract. There also may be a question of waiver based on plaintiff's alleged failure to comply with the appeal and grievance procedures prescribed in the agreement.[64] Given the circumscribed nature of the federal claims surviving defendants' motion for summary judgment, the Court finds that the state law issues predominate over the related federal claim that the magnitude of the penalty is unreasonable. Furthermore, the Court finds that to exercise jurisdiction over the state claims could cause unwarranted jury confusion.[65] Accordingly, the Court will dismiss plaintiff's pendent state law claims without prejudice. *See Moor v. County of Alameda,* 411 U.S. 693, 716, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Aiello v. City of Wilmington, supra,* 426 F.Supp. at 1295.

An Order will be entered in accordance with this Opinion.

---

**62.** *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**63.** Plaintiff has asserted the same two state law claims in an independent action filed in state court against the defendant City and its Department of Public Safety and Bureau of Fire. *Hayes v. City of Wilmington, et al.,* Civil Action No. 555, 1977 (Del.Super.Ct., filed May 18, 1977); *see* Docket Item 38A, exh. A–16.

**64.** *See* Answer of Defendants, Docket Item 5, par. 37(b).

**65.** As noted above in the discussion of plaintiff's claims against the City asserted directly under the Fourteenth Amendment, the state law claims presented in this case do not provide an avenue for avoiding an issue of constitutional law. *See* text following note 25 *supra.*